ROBERT J. GLADWIN, Judge
In this termination-of-parental-rights case, both parents, in separate briefs, appeal the Madison County Circuit Court's order of April 16, 2018, terminating their parental rights to two children, EP (born June 3, 2001) and CP (born February 3, 2008). Both Malisa Phillips and Wayne Phillips argue that appellee Arkansas Department of Human Services (DHS) failed to prove that it made meaningful efforts to remedy their lack of housing. Malisa also contends that the circuit court erred in terminating her parental rights because there was insufficient evidence to support the grounds for termination or that termination was in the children's best interest. We affirm.
I. Standard of Review
We review termination-of-parental-rights cases de novo. Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2017); M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Anderson v. Douglas , 310 Ark. 633, 839 S.W.2d 196 (1992).
The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Yarborough v. Ark. Dep't of Human Servs. , 96 Ark. App. 247, 240 S.W.3d 626 (2006). When determining the clearly erroneous question, the appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. Dodd v. Ark. Dep't of Human Servs. , 2016 Ark. App. 64, 481 S.W.3d 789. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. Swangel v. Ark. Dep't of Human Servs. , 2018 Ark. App. 197, at 3, 547 S.W.3d 111, 113.
*505 II. Facts
DHS filed a petition for emergency custody and dependency-neglect (DN) alleging in the attached affidavit that AP, appellants' daughter born March 22, 1999, had been the victim of sexual abuse.[1] Officers feared for the safety of her siblings, EP and CP, and they were taken into protective custody.[2] The circuit court signed an ex parte order finding probable cause to believe the children were dependent-neglected (DN) and could not remain with their parents.
The probable-cause order reflects that it was still in the children's best interest to remain in DHS custody because of AP's allegations of sexual abuse in the home. The circuit court also found that appellants did not have stable housing and that the children had many unexcused absences in school. The parents were granted supervised visitation and ordered to (1) cooperate with DHS; (2) attend the case-plan staffing; (3) keep DHS informed of their address and phone number; (4) refrain from using illegal drugs or alcohol; (5) obtain and maintain stable housing, employment, and a clean, safe home; (6) demonstrate the ability to protect the children; (7) maintain contact with their attorney; and (8) follow the case plan and court orders.
By order of January 27, 2017, the court found that the goal of the case should be reunification with both parents. The court ordered that the parents should submit to weekly random drug screens.
In the March 7, 2017 order, the children were found to be DN due to neglect and parental unfitness. The court based its finding in part on its determination that appellants had "inappropriate and unstable housing." The parents were ordered to participate in individual counseling. The court found that DHS had not made reasonable efforts because it had not held a case-plan staffing or developed a case plan.
After a review hearing on July 28, 2017, the children were ordered to remain in DHS custody because of a pending "CACD" investigation "which gives concern as to safely returning the children home to parents." The goal remained reunification, and it was ordered that the children be placed in a foster home together. Both parents were found to have complied with the court orders in that they had "maintained a home, attended counseling, completed parenting classes and cooperated with" DHS. DHS was found to have complied with all the court orders and the case plan. Further, the court found that DHS had made reasonable efforts to provide family services and to finalize the permanent plan of the juveniles by providing services to achieve reunification.
In its permanency-planning order, the court found that the parents were not complying with the case plan and orders, had not made significant measurable progress, *506 and had not worked diligently toward reunification. The court authorized a plan for adoption with a concurrent goal of APPLA (Another Planned Permanent Living Arrangement). The court found that the parents had participated in counseling, completed parenting classes, and maintained visitation with CP. However, neither had maintained weekly contact with DHS, maintained stable housing, maintained a clean and safe home, kept DHS informed of their address and telephone number, or maintained stable employment. The court found that the residence the parents had been in for three months was "filled with roaches, filth, nastiness, holes in walls, ceilings, and there is a very large gap all around the front exterior door." The court found that "at no time during this one-year case have parents had safe, clean, stable housing for the children." The court found that DHS had made reasonable efforts to provide services for reunification.
DHS filed a petition for termination of parental rights alleging three grounds: (1) the children had been out of the custody of the parents for twelve months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions which caused removal, those conditions had not been remedied, citing Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Repl. 2015); (2) subsequent to the filing of the original petition for DN, other factors or issues arose which demonstrated that placement of the children in the parents' custody would be contrary to their health, safety, or welfare and that despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues, citing Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ; and (3) the parents had subjected the children to aggravated circumstances, citing Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a) . For each ground pled, DHS alleged that the children were taken from the home due to the sexual-abuse allegations and unstable housing and that the parents had been unable to provide clean, safe, and stable housing throughout the case. DHS also alleged that the children were highly adoptable and that they would be subjected to potential harm if returned to the parents, who continued to have unstable, inappropriate housing.
At the March 2, 2018 termination hearing, Whitney Widner, DHS family service worker, testified that the sexual-abuse allegations and unsanitary home conditions were the reasons the case had been opened. She said that the parents were not the alleged offenders of the sexual abuse. She said that the children were doing well in foster care and that she believed they were adoptable. She said that CP wanted to return to his parents' custody and that EP was almost seventeen years old. She said the children were not in a potential adoptive home, but the foster family was willing to keep them as long as they needed to stay. The children had been placed together and were bonded.
Widner said that Malisa had participated in individual counseling, completed parenting classes, regularly visited with CP, visited with EP when EP desired to visit, and maintained contact with DHS. She also said that Malisa did not obtain and maintain stable housing, and she believed the parents had slept in their car at one point. She was aware that the parents had obtained a new home in Fort Smith but had moved in only the day before the hearing. She opined that the children could not return to the custody of their parents because she did not believe the parents had shown stability in their housing. She said that DHS recommended that the parents' parental rights be terminated.
*507 Malisa called Wayne to testify in her defense, and he confirmed that they had moved into a new home in Fort Smith the day before the hearing. He explained that there had been a delay in moving into the home because they had to wait for the landlord to install a stove and a refrigerator. He said that the home has electricity, water, and heat and that they have beds and food for the children. Wayne also said that he and his wife receive Social Security income and have sufficient funds to pay for their rent, utilities, and food. Wayne said that he is not working because he recently had suffered two heart attacks, and he was looking for new employment. Wayne told the court that he and Malisa have a close bond with CP and that their visits had gone well. CP had expressed to Wayne that he wants to return home. Wayne said that EP had attended three visits during the case and that, while he wants EP to return home, considering her age, he was not going to force her. Wayne was concerned that if EP turned eighteen and left foster care, CP would be traumatized by being left alone. Wayne also explained that he and Malisa never missed any drug-screen requests, that he went whenever he was called, but that he simply did not receive many calls requesting random drug screens. Wayne also testified that while he did not talk with Ms. Widner daily, he talked with her regularly and kept her informed of everything.
Wayne explained their housing difficulties. He said that when the case began, the family was living with relatives. After that, the family lived in two separate homes in Lincoln, Arkansas. He acknowledged that one home had a sewer issue. He said that they attempted to work with the landlord. When the landlord refused to fix the home's issues, they had no choice but to move. He said they had another home that had structural issues, and because of this, the home was not appropriate. They looked "all over" to find a new home. He said that he was told his housing was inappropriate every time he obtained different housing, and they would move out and look for new housing. Wayne said that he learned that housing was cheaper in Fort Smith, and they were able to secure a home without any structural issues. He said that the rent for the new home was almost half as much as it had been in Lincoln, Arkansas. Wayne testified that the home was appropriate, and he offered pictures.
Danica Stout, the CASA advocate, testified that she had prepared the report and recommended that the children be adopted and that parental rights be terminated. Ms. Widner testified again, stating that DHS learned that the parents had been living in their car as of mid-January 2018. She said that she had met them at a gas station and they told her they had been staying in their van for a few nights. She said the van had a very strong odor and that the parents had been trying to maintain their hygiene when they could at a church or at friends' houses.
The circuit court terminated parental rights by order filed April 16, 2018. The court found that DHS had proved two grounds by clear and convincing evidence-failure-to-remedy and subsequent-factors. The order states as follows:
The Court finds today that these children were adjudicated [DN] due to parents' unsafe and unstable housing, and parents have just moved again yesterday. The Court finds that parents just got a new house yesterday, but that is not enough-Mother and Father need to show that they can maintain a home for these children. Throughout the life of this case, Mother and Father have consistently failed to maintain safe, stable housing, and they haven't demonstrated *508 an ability to protect these children and keep them safe from harm. The Court finds that there is clear and convincing evidence that despite meaningful efforts by [DHS], parents have not remedied the conditions which caused removal. They have moved multiple times throughout the life of this case, including yesterday, and none of their homes have been safe or appropriate for the children. These parents have not demonstrated the most important part of the case plan: that they can provide a safe, stable home for these children.
....
[DHS] has provided the following services to the family: counseling, parenting class referrals, transportation services, medical services, dental services, clothing, case management, home visits, head lice treatment, drug screens, and family counseling. Despite these services, Mother and Father have not been able to obtain and maintain safe, stable, clean housing that would be appropriate for themselves and their children. Thus, despite the offer of appropriate family services, Mother and Father have manifested the incapacity or indifference to remedy the subsequent issues of unstable, unsafe housing which prevents the placement of the juveniles in the custody of the parents.
The Court finds today that parents have not remedied the subsequent issues that prevent the placement of the children in their custody. Specifically, parents have moved multiple times throughout the life of this case, including again yesterday, and none of the homes have been safe or appropriate for the children. Throughout the life of this year-long case, parents have failed to demonstrate the most important part of their case plan: the ability to provide a safe, stable home for these children.
The circuit court also found that it was in the children's best interest to terminate parental rights, considering the likelihood that they would be adopted and the potential harm of returning the children to their parents. The circuit court cited testimony of Ms. Widner that the children are extremely adoptable and found that the potential harm in returning them to their parents was "great" because the parents had not shown any stability throughout the life of the case. Both parents filed a timely notice of appeal, and this appeal followed.
III. Wayne's Statutory-Grounds Argument
Both parents argue that there was insufficient evidence to support the circuit court's order terminating their parental rights because there was no evidence that DHS made meaningful efforts to remedy their lack of housing. Wayne argues that DHS failed to prove meaningful efforts in regard to their housing only in relation to the failure-to-remedy ground. Because Wayne does not challenge the circuit court's subsequent-factors finding, he failed to challenge one of the statutory grounds on which the circuit court relied to terminate his parental rights. Accordingly, we must affirm the termination of Wayne's parental rights based on the circuit court's finding of subsequent factors. When an appellant fails to attack the circuit court's independent, alternative basis for its ruling, we will not reverse. Casarreal v. Ark. Dep't of Human Servs. , 2010 Ark. App. 622, 2010 WL 3700209.
IV. Malisa's Statutory-Grounds Arguments
Malisa argues that there was a lack of evidence regarding DHS's efforts to remedy the housing issue in relation to both the failure-to-remedy ground and the subsequent-factors ground. She argues that the *509 record does not demonstrate that DHS made meaningful efforts to rehabilitate her and correct the conditions that caused removal based on "the housing issue." Malisa acknowledges that the circuit court found that DHS had made reasonable efforts to reunify the family and argues that none of those efforts addressed the housing situation. She claims that at the termination hearing, nothing was offered to address housing and no testimony was offered as to what services addressed housing. Thus, Malisa claims that DHS failed to meet its burden of showing that it had made meaningful efforts to remedy the causes for removal.
Malisa's arguments are not preserved. We will not address an argument that DHS failed to make meaningful efforts to reunify the family when the appellant did not appeal from an earlier permanency-planning order finding reasonable efforts. Anderson v. Ark. Dep't of Human Servs. , 2011 Ark. App. 526, 385 S.W.3d 373. Further, Malisa did not object at the termination hearing to DHS's failure to provide services, which is a waiver of that issue on appeal. Contreras v. Ark. Dep't of Human Servs. , 2015 Ark. App. 604, 474 S.W.3d 510.
Even though Malisa also contends that the circuit court erred in regard to the subsequent-factors ground, we do not address her arguments because only one ground is necessary to terminate parental rights. Whitaker v. Ark. Dep't of Human Servs. , 2018 Ark. App. 61, 540 S.W.3d 719. Because Malisa's argument regarding the failure-to-remedy ground is not preserved, we hold that the circuit court can be affirmed based solely on its findings regarding the parents' failure to remedy the conditions that caused removal.
V. Malisa's Best-Interest Argument
Finally, Malisa claims that the circuit court erred in finding that it was in the children's best interest to terminate her parental rights because insufficient evidence supports the decision. She contends that the circuit court failed to consider that EP would soon be eighteen years old; thus, it would be unnecessary to terminate parental rights as to EP because she could achieve her concurrent goal of APPLA, which would allow EP to leave the foster-care system as an adult. And CP would be left alone in a system without either his parents or his sister. Further, CP wanted to return to his parents. Malisa argues that the circuit court's failure to consider these facts warrants reversal.
Malisa also contends that the circuit court's potential-harm analysis was flawed in that DHS failed to offer services to assist the parents in finding appropriate housing. She contends that without DHS assistance, they did find appropriate housing. She argues that the potential harm in traumatizing CP by terminating parental rights, rather than maintaining the status quo of the case for a limited period of time for the parents to demonstrate they could maintain the new home while the children remained in their same foster home, cannot be in the children's best interest.
The best-interest finding must be based on a consideration of two factors: (1) the likelihood that if parental rights are terminated, the juvenile will be adopted, and (2) the potential harm caused by continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Malisa does not challenge the circuit court's adoptability finding. We hold that the circuit court's findings regarding the children's best interest are not clearly erroneous.
The court was not required to find that actual harm would result or to affirmatively identify a potential harm. McFarland v. Ark. Dep't of Human Servs. , 91 Ark. App. 323, 210 S.W.3d 143 (2005). Potential harm is viewed broadly and in a forward-looking manner, and *510 there is no requirement that an actual harm be identified or proved. Bearden v. Ark. Dep't of Human Servs. , 344 Ark. 317, 42 S.W.3d 397 (2001). Admitted failure to comply with court orders can suffice as indicating a potential harm. B.H.1 v. Ark. Dep't of Human Servs. , 2012 Ark. App. 532, 2012 WL 4478389. The intent of the termination-of-parental-rights statute is "to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9-27-341(a)(3). In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parents' care and custody. Dowdy v. Ark. Dep't of Human Servs. , 2009 Ark. App. 180, 314 S.W.3d 722. There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. Jessup v. Ark. Dep't of Human Servs. , 2011 Ark. App. 463, 385 S.W.3d 304.
Malisa failed to comply with the circuit court's orders. Further, the family's extensive history with DHS indicates past behavior that predicts likely potential harm. Accordingly, the circuit court's determination that it was in the children's best interest to terminate parental rights is not clearly erroneous.
Affirmed.
Gruber, C.J., and Brown, J., agree.

AP was not included in the termination-of-parental-rights order because she was not a minor when the order was filed.

The affidavit also included DHS's history with the family beginning in March 2011 with a true finding for environmental neglect; May 2011 true findings of EP and another sibling having been victims of sexual contact and indecent exposure by a man who was not their parent; February 2012 true finding that AP and EP were victims of sexual contact and sexual penetration by two men who were not their fathers; true finding of sexual contact and sexual penetration in January 2016 listing AP as the alleged victim and the offender as a man who is not her father; current investigation open for inadequate supervision listing CP as the alleged victim and an unknown offender; open investigation for AP, EP, and CP as the alleged victims and appellants as the offenders; and several unsubstantiated reports of environmental and/or educational neglect beginning in 2008.