Cite as 2021 Ark. App. 466

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-21-257

| | |
|---|---|
| SAMANTHA CUMMINGS<br>APPELLANT | **Opinion Delivered** November 17, 2021 |
| V. | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10JV-19-93] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE BLAKE BATSON, JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Samantha Cummings appeals the March 17, 2021 order of the Clark County Circuit Court terminating her parental rights to her son, H.C. (DOB: 09/13/2018). On appeal, Cummings challenges the circuit court's finding that termination was in H.C.'s best interest. Specifically, Cummings contends that the evidence presented was insufficient to support the circuit court's best-interest determination because there was a lesser restrictive alternative to termination, and she did not pose a risk of potential harm to H.C. We disagree and affirm.

The Arkansas Department of Human Services (DHS) took emergency custody of H.C. on October 1, 2019, due to allegations of substance misuse and parental unfitness.[1]

---

[1]In September 2018, a protective-services case was opened when both Cummings and H.C. tested positive for methamphetamine at H.C.'s birth.

H.C. was adjudicated dependent-neglected on November 4, 2019, based on inadequate supervision. The goal of the case was established as reunification with a concurrent goal of guardianship or adoption with a fit and willing relative. Cummings was ordered to submit an affidavit of financial means and an affidavit of background information; cooperate with DHS, comply with the case plan, and obey orders of the court; watch the "Clock is Ticking" video; remain drug-free and submit to drug screens, with a refusal to comply and/or failure to produce specimen within an hour deemed a positive test; keep DHS informed of her current address and provide notification of any change in address or marital status; submit to a drug-and-alcohol assessment, follow the recommendations thereof, and provide a copy of the results to DHS; submit to a psychological evaluation, follow the recommendations thereof, and provide a copy of the results to DHS; participate in parenting classes; obtain and maintain clean, safe and stable housing with utilities turned on; obtain and maintain stable employment or sufficient income to support the family; allow DCFS access to the home; if requested by DHS, attend counseling and follow the recommendations thereof; and if requested by DHS, attend AA/NA meetings and provide proof of attendance to DHS.

The circuit court held a review hearing on February 3, 2020, at which it found that Cummings, who was absent from the hearing, failed to comply with the case plan and orders of the court. Specifically, the court found that Cummings had failed to maintain contact with DHS, had started—but did not complete—parenting classes, had not visited H.C. since December 16, 2019, and had failed to maintain stable housing; the status of her drug use was unknown. The case goal of reunification with a concurrent goal of relative placement or adoption was continued; Cummings was ordered to comply with the previous orders of

2

the court. By an agreed order entered on April 3, 2020, the circuit court again found Cummings in noncompliance with the case plan and orders of the court and that her whereabouts were unknown.

Another review hearing was held on June 1. The circuit court found Cummings, who was present at the hearing, in compliance with the case plan and court orders. The court noted that Cummings went through a detoxification program; entered an inpatient-rehabilitation program; was receiving individual counseling; had a plan to take online parenting classes; and, once released from rehab, had a home and employment. The circuit court observed that Cummings is "slowly benefiting from her engagement in the services towards the goals of the case plan." The case goal of reunification with a concurrent goal of relative placement or adoption was again continued.

A permanency-planning hearing was held on August 31. At that time, the circuit court found that since completion of inpatient rehabilitation, Cummings had not complied with the case plan. The order specifically noted that since Cummings had completed rehab, "the Department has not been able to keep up with her to drug screen her." The order additionally put Cummings on notice that if she failed to make serious efforts toward reunification, DHS would seek termination of her parental rights. On October 30, DHS filed a petition seeking to terminate Cummings's parental rights, alleging multiple statutory grounds and stating that termination was in H.C.'s best interest.

The circuit court again reviewed the case on November 2 and found that Cummings had failed to comply with the case plan and orders of the court. The court found that Cummings had failed to obtain a psychological evaluation as ordered, had not attended

counseling since completing rehabilitation, failed to submit to drug-screen requests or hair-follicle testing, failed to provide proof of NA/AA attendance, had not participated in outpatient drug treatment, provided no proof of employment, was being evicted from her home, and failed to complete parenting classes. The next hearing date was scheduled to hear DHS's termination petition.

On January 20, 2021, the circuit court entered an agreed continuance order resetting the termination hearing, finding that the court ordered DHS "to look into the potential for a subsidized guardianship of [H.C.]. [DHS] reports that since adoption has not been ruled out as being in the best interest of [H.C.], that is not an appropriate goal due to [H.C.'s] age and his circumstances."

Following the March 1 termination hearing, the circuit court entered an order terminating Cummings's parental rights to H.C. on two statutory grounds: failure to remedy[2] and subsequent factors.[3] She timely appeals from the termination order.

This court reviews termination-of-parental-rights cases de novo.[4] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[5] The appellate inquiry is whether the circuit court's finding that

---

[2]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(a)* (Supp. 2021).

[3]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii).

[4]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[5]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

the disputed fact was proved by clear and convincing evidence is clearly erroneous.[6]  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[7]  In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[8]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[9]  The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist.[10]  Proof of only one statutory ground is sufficient to terminate parental rights.[11]  Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[12]  The intent behind the termination-of-parental-rights statute

---

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii).

[10]Ark. Code Ann. § 9–27–341(b)(3)(B).

[11]*Tillman, supra.*

[12]*Id.*

is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[13]

On appeal, Cummings does not challenge the sufficiency of the evidence supporting the statutory grounds for termination of her parental rights. She argues only that the circuit court erred in finding that termination was in H.C.'s best interest. Specifically, in challenging the circuit court's best-interest determination, Cummings does not attack the adoptability prong of the circuit court's best-interest finding. Instead, Cummings asserts that termination of her parental rights was not in the best interest of H.C. because there was a less restrictive alternative available in the form of permanent custody or guardianship, and she did not pose a risk of harm to H.C.

Arkansas Code Annotated section 9-27-329(d)[14] provides that in initially considering the disposition alternatives and at any subsequent hearing, the court shall give preference to the least restrictive disposition consistent with the best interest and welfare of the juvenile.

Cummings argues that in this case, because H.C. was in the care of Karen and Gary Bell, his paternal grandparents, "termination was not necessary to achieve a permanency goal of guardianship or permanent custody, which would have maintained the status quo for the case and furthered the public policy of the state to preserve and strengthen families."

---

[13]Ark. Code Ann. § 9-27-341(a)(3).

[14](Supp. 2021).

She asserts that H.C. was doing well living in his current foster-care placement with his grandparents, and she was able to exercise supervised visitation with H.C. She further argues that she supported a plan to achieve permanency via a grant of custody or guardianship to the grandparents instead of the more extreme remedy of termination of her parental rights.

Cummings contends that the termination-of-parental-rights caselaw is "arbitrary and haphazard." She further urges that "DHS must be held accountable and the state's policy of strengthening and preserving families must be enforced where there are ways to safely achieve permanency for children without completely destroying a family."

Cummings fails to cite any authority, with similar facts, to support her argument for reversal. However, we note that in *Phillips v. Arkansas Department of Human Services*,[15] despite Phillips's lesser-restrictive-alternative argument, we upheld the termination of the mother's parental rights even though the children were living with the grandparents in a foster-care placement. The court took care to distinguish between the permanency achieved, or lack thereof, between children placed in the legal custody of a relative and children placed in foster care with a relative.[16] When a child is in the legal custody of a relative and not in a temporary foster-care placement with a relative, permanency is not at issue.[17] Here, as in *Phillips*, H.C. was living with grandparents in a foster-care placement and thus had not achieved permanency.

---

[15] 2019 Ark. App. 383, 585 S.W.3d 703.

[16] *See id.*

[17] *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, 577 S.W. 3d 26.

Also, Cummings's assertions that termination was not in H.C.'s best interest because it removed her obligation to provide support, it no longer allowed her visitation with H.C., and there was "no risk" of H.C. living in uncertainty by maintaining the "status quo" are without merit. The record reveals that Cummings provided no support and was unable to maintain employment throughout the pendency of the case. Additionally, Cummings's visitation with H.C. was sporadic, at best, attending only twenty-five visits, and missing forty-two during the case.

Although Cummings argues that H.C.'s best interest "could have been better served by granting [her] the additional time she requested or by placing H.C. in the custody or guardianship of the grandparent," there is no compelling reason to believe that Cummings would eventually remedy the issues that caused removal and reunify with H.C.

Cummings also argues that she posed no risk of potential harm to H.C., especially if he remained in the care of his grandparents. She asserts that if she had posed a threat to her child, she would not have been permitted continued visitation. In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of future behavior.[18] Here, throughout the pendency of the case, Cummings refused to submit to drug testing, was unable to maintain stable housing or employment, failed to maintain contact with DHS, and was inconsistent with visitation, among other things. She had only one brief period of compliance during the middle of the case, and then she regressed again.

---

[18]*Phillips v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 565, 567 S.W.3d 502.

After a de novo review of Cummings's limited best-interest argument, we are not left with a definite and firm conviction that a mistake has been made. Therefore, we affirm the order terminating her parental rights to H.C.

Affirmed.

KLAPPENBACH and GRUBER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.