Cite as 2025 Ark. App. 271

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-2

| | |
|---|---|
| BRANDY SMITH AND WILLIE SMITH | Opinion Delivered April 30, 2025 |
| APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-23-165] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**STEPHANIE POTTER BARRETT, Judge**

Brandy and Willie Smith separately appeal the Garland County Circuit Court's order terminating their parental rights to their children: son MC1 (DOB 05/08/15); daughter MC2 (DOB 05/09/18); and daughter MC3 (DOB 05/07/20).  On appeal, Brandy and Willie both argue there was insufficient evidence to support the grounds for termination.  We affirm the termination of Brandy's parental rights, but we reverse and remand the termination of Willie's parental rights.

The Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect and emergency custody of the children on April 6, 2023, alleging that they were at substantial risk of serious harm as a result of abuse, neglect, and parental unfitness.  The attached affidavit of family service worker Jennifer Darter noted that a claim of

environmental neglect had been found to be true; a protective-services case had been opened; and she had begun working with the family on June 27, 2022, making home visits, providing home-cleaning instructions and cleaning supplies, constructing a chore chart, and providing electric heaters for the family. Progress toward maintaining a clean house was sporadic, and on multiple occasions, DHS staff intervention was necessary to assist the family in cleaning the house in a manner that ensured the safety of the children. The family began intensive family services in November 2022 with Youth Villages.

Willie was arrested on January 25, 2023, and charged with rape of a minor. Brandy had to obtain employment, and her mother, Pam Lininger, who lived in the home, kept the children. After Willie's arrest, the condition of the home worsened; and Darter continued to assist the family with home visits, budgeting, clothing, and diapers. Brandy was served with an eviction notice in March 2023; Brandy did not have any family members who could provide housing, but she planned to buy a camper and place it on her family's property.

During an April 3 home visit, Brandy showed Darter pictures of the older model RV she had purchased, but it needed a fuel pump; Brandy informed Darter that there was an electric hookup for the RV but no water hookup. Brandy allowed Darter inside her current home, which Darter found to be environmentally unsafe, with what appeared to be animal feces on the floor in the children's bedroom/play area and old food containers and other trash in Brandy's bed with MC2 and MC3. Darter had difficulty walking through the home due to the clutter; she noted that the kitchen counters were unsafe because of the amount of trash and dirty dishes on them; the trash can was overflowing; and there were spiders

2

along the walls and ceilings in every room. When asked what he had for dinner the night before, MC1 said he had peanut butter, and his sisters had tater tots. MC1 could not tell Darter when he had last taken a bath, and the children's feet were caked with trash and dirt. The children were removed from Brandy that day because the conditions presented an immediate danger to their health and well-being. In light of this information, the circuit court entered an ex parte order of emergency custody.

On April 12, Brandy and Willie stipulated to probable cause, and an agreed probable-cause order was entered on April 21. On May 17, Brandy and Willie stipulated that the children were dependent-neglected due to Brandy's failure to provide safe and appropriate housing, and the court ordered that the children remain in DHS custody. The court found that Willie was a nonoffending parent. The Department was found to have made reasonable efforts to prevent or eliminate the need for removing the children from the home. The goal of the case was reunification with a concurrent goal of placement with relatives or fictive kin. An agreed adjudication order was entered on May 25.

The circuit court held a review hearing on August 30 and entered an agreed review order on September 5, finding that Brandy was compliant with the case plan, having obtained employment and completed her psychological evaluation, but Willie was unable to access services due to his incarceration. The circuit court found that, given Brandy's need to find adequate housing, it was in the children's best interest to remain in DHS custody. DHS was found to have made reasonable efforts to provide family services. The goal of the case remained reunification with a concurrent goal of placement with relative or fictive kin.

3

Another review hearing was held on November 29, and the circuit court entered an agreed review order on December 11, finding again that Brandy was compliant with the case plan, but Willie was unable to participate in services due to his incarceration. DHS was found to be assisting Brandy with finding permanent housing. The children remained in DHS custody with a goal of reunification.

A permanency-planning hearing was held on March 27, 2024, and an agreed permanency-planning order was entered on April 9. The circuit court found Brandy was mostly compliant with the case plan, continuing to maintain employment and having completed her psychological evaluation, but she still had not obtained appropriate housing. Willie was still incarcerated, which limited his ability to participate in services. The circuit court ordered that the children remain in DHS custody because safety factors prevented placement with Brandy at that time—specifically, she needed to follow through with the recommendations of her psychological evaluation and obtain appropriate housing. However, the circuit court found Brandy had made significant and measurable progress; therefore, the goal remained reunification. DHS was found to have made reasonable efforts to provide family services and to finalize a permanency plan for the children.

A review hearing was held on June 26, and in an order filed July 2, the circuit court found that Brandy was partially complaint with the case plan, but she had not allowed DHS to inspect her home, she was not in counseling as recommended in her psychological evaluation, and she was in a relationship with a registered sex offender; Willie was incarcerated and had limited availability to services. The children were ordered to remain

4

in DHS custody due to safety concerns that prevented placement with Brandy—specifically, she refused to participate in counseling or to allow DHS to inspect her home, and she had not demonstrated that she had the ability to protect the children from being around inappropriate people. DHS was found to have made reasonable efforts to provide family services and to finalize a permanency plan for the children. However, the circuit court changed the goal of the case to adoption.

DHS filed a petition for termination of parental rights on July 16, alleging that termination of parental rights was in the children's best interest and asserting Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023) as a ground for termination against both Brandy and Willie. Section 9-27-341 provides that the children have been adjudicated dependent-neglected and have continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions causing removal, the conditions have not been remedied by the parent. DHS pled under this ground that the children have been adjudicated dependent-neglected and have continued out of the custody of the mother for twelve months, and despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal, the conditions have not been remedied by the parents. Specifically, DHS alleged that the children were adjudicated dependent-neglected due to Brandy's failure to provide safe and appropriate housing; that Brandy had not participated in counseling, was in a relationship with a sex offender, and it was unknown if she had appropriate housing because she had denied DHS access to her house; and that Willie had not completed any services

and was incarcerated due to pending charges alleging that he had raped a juvenile. DHS also alleged against Willie the ground found in Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii), that he is sentenced in criminal proceedings for a period of time that would constitute a substantial period of the children's lives. Specifically, DHS asserted that Willie was incarcerated on charges of rape of a minor; that a disposition hearing was scheduled for July 29, 2024; and that, "due to the serious nature of the allegations, it is likely that by the time the termination hearing is held, he will be sentenced to the Arkansas Department of Corrections for a substantial period of time."

A hearing on the termination petition was held on September 25, and the circuit court entered an order terminating Brandy's and Willie's parental rights on October 4 on the basis that the children had been adjudicated dependent-neglected and had continued out of the custody of the parents for twelve months, and despite meaningful efforts by DHS to rehabilitate the parents and correct the conditions causing removal, those conditions had not been remedied by the parents. In support of this finding, the circuit court made the following findings:

> a. The juveniles were adjudicated dependent-neglected on May 17, 2023, due to the mother's failure to provide the juveniles with safe and appropriate housing. Specifically, despite a protective services case that had been opened for almost 1 year, the family home was filthy with the kitchen counter and floors covered with trash and dirty dishes and animal feces covering the floor.

> b. The conditions that prevent the juveniles from being safely placed it the mother's home have not been remedied. The home is still not appropriate. The case worker reported large amounts of trash in the home and the strong odor of animal urine in the home. Also, despite the case being opened for 17 months, the mother just started counseling and parenting classes in July or August 2024. The mother also

6

has no plan for childcare while she works. None of her family members who she proposed to help provide care for the juveniles are appropriate. The father is incarcerated and has not been able to complete any services. He is facing criminal charges for the rape of a juvenile.

The circuit court found that it was in the best interest of the children for parental rights to be terminated, finding that they are adoptable and that they would be subjected to potential harm if returned to Brandy's custody because there was no evidence that there had been any substantial change in her situation since the children were removed.

Jennifer Darter testified at the termination hearing. She explained that a protective-services case was opened in June 2022, and the children were removed from the home in April 2023 due to the conditions of the home and because the family was being evicted. Darter noted that Willie had been incarcerated since January 2023, and he had not been able to participate in any services during that period; Willie's next court hearing was scheduled for November 4.

Darter agreed that Brandy had completed her psychological evaluation but had not begun the recommended counseling until August 2024; she could not currently participate in intensive family parenting because the children were not in the home; and she had completed only eight of twenty parenting classes. Darter said Brandy had obtained housing, and she was able to perform her first home assessment after the July permanency-planning hearing; at that time, Brandy had several cats living inside, the smell of urine was very strong, there was trash on the floor and countertops, and the house was "just dirty." When asked what prevented a trial placement of the children with Brandy, Darter explained that Brandy

7

worked five nights a week, and she was not able to identify an appropriate caregiver for the children while she worked. Darter testified that Brandy was in a relationship with a level 2 sex offender, and when she performed a random home visit, he was in the house; Brandy told her that when the children were returned to her custody, she would make sure that he was not around them. Darter did not believe that it was in the children's best interest to be returned to Brandy's custody because the situation regarding appropriate housing had not improved.

Sonya Cole, a DHS adoption specialist, testified that there were five potential placements for the children as a sibling group; individually, there were 72 homes for MC1, 82 homes for MC2, and 127 homes for MC3. Cole stated that the children have no conditions that would make them not adoptable. DHS rested its case after Cole's testimony.

Brandy testified that she had lived in her current home for several months, and she was renting to own. She noted that she had been working for almost two years, she attended therapy and parenting classes, she was going to school, and she had attended visitation except when she was sick. She explained that her father had moved in with her to watch the children while she worked, and he helped by giving her rides when she needed them. She admitted that he slept on the floor, but she explained that he liked sleeping on the floor because of his back. She said that her "friend" that was a convicted sex offender did not give her rides anymore, and if her children were to return home, she could keep him away from them; she denied that he had ever been around the children. She asked the circuit court to give her more time to finish the case plan.

On cross-examination, Brandy explained that her house technically has only two bedrooms, but she was in the process of making one of the bedrooms into two rooms so her son had a separate bedroom; she also explained that her mother lives with her in a small room off the laundry room. When asked about the smell of cat urine, Brandy asserted that she keeps the house clean except when she is sick, and she cleans the litter box. She said that she did not know that she could have started the parenting classes earlier; if she had known, she would have started them sooner. When asked about her father's watching pornography on his phone with the children in the room during supervised visitation, she said it was not appropriate, and she had talked to him about that.

Brandy testified that she has three cats and one dog, and they all live inside. She denied that she was romantically involved with her "friend," and she denied that she had ever stayed with him, although she admitted staying with friends and on her parents' land before she moved into the house she has now.

In making its decision to terminate parental rights, the circuit court noted Brandy's assertion that she had done everything DHS had asked her to do, but it pointed out that while she had started everything she had been asked to do, she had completed nothing. It found that the situation in the home was no better than when the case had begun; if the children were returned to Brandy, they would be in a similar situation from which they had been removed. It found that the "support people" in Brandy's life were all inappropriate: they were either unhealthy or physically unable to help, one was a registered sex offender, and the grandfather believed it was permissible to view pornography in public while visiting

his grandchildren. The circuit court stated that it could not return the children to that situation; they were in need of stability, and time was up. As for Willie, the circuit court found that he was still incarcerated awaiting trial on serious felony charges. It further found that the children are adoptable and that it was in their best interest for parental rights to be terminated.

I. *Standard of Review*

This court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Robinson v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 64, 684 S.W.3d 219. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Jennings v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 429, 636 S.W.3d 119. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the circuit court's opportunity to judge the credibility of the witnesses. *Id.*

An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the statutory grounds is satisfied and that termination is in the children's best interest. *Robinson, supra.* Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction of the allegation sought to be established. *Rugama v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 62, 684 S.W.3d 256. To make a best-interest finding, the circuit court must consider two factors; (1) the likelihood of adoption and (2) the potential harm that would result to the juvenile if he or she were

returned to the parent's custody. *Beanblossom v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 605. A best-interest finding as a whole—rather than each factor—must be supported by clear and convincing evidence. *Id.*

## II. *Termination of Brandy's Parental Rights*

The circuit court terminated Brandy's parental rights on one ground—twelve months failure to remedy. On appeal, Brandy argues that the evidence was insufficient to support this ground. While she concedes that her children were adjudicated dependent-neglected and continued out of her custody for more than twelve months, she asserts that DHS failed to present sufficient evidence that it made meaningful efforts to rehabilitate her and remedy the cause of the children's removal. Specifically, she argues that the children were removed due to environmental neglect; that the proper services to address that issue would involve assistance in obtaining and maintaining a suitable home; but that the record does not reflect any specific services pertaining to housing that were offered to her after the children had been removed from her care. She asserts that before she could prove she could maintain a clean home, she first needed assistance in obtaining a home, and without DHS assistance, it took her over a year to do so. Brandy contends that DHS never assisted her in cleaning her home nor helped her obtain the necessary homemaker services after the children had been removed from her custody.[1]

---

[1]Brandy also notes that there was significant testimony about issues that arose after the children had been removed from her custody, such as the relationship with her friend who DHS believed was a sex offender and the lack of appropriate caregivers for the children while she worked, but she argues that evidence cannot be considered under the twelve-month

11

In response, DHS and the attorney ad litem assert that the circuit court did not err in terminating Brandy's parental rights on the failure-to-remedy ground but that this argument is not preserved for appellate review. We agree that the argument is not preserved.

This precise issue was addressed in *Phillips v. Arkansas Department of Human Services*, 2018 Ark. App. 565, 567 S.W.3d 502. In *Phillips*, one reason the children were removed was because the parents did not have stable housing; one of the grounds for termination was twelve months failure to remedy because the parents had been unable to provide clean, safe, and stable housing throughout the case. On appeal, the mother argued that the record did not demonstrate any meaningful efforts on the part of DHS to rehabilitate her and correct the housing issue that caused removal of the children. While she acknowledged that the circuit court found that DHS had made reasonable efforts to reunify the family, she asserted that none of the efforts addressed housing, and there was no evidence presented at the termination hearing regarding services that addressed housing. This court held that these arguments were not preserved, holding,

> We will not address any argument that DHS failed to make meaningful efforts to reunify the family when the appellant did not appeal from an earlier permanency-planning order finding reasonable efforts. Further, [appellant] did not object at the termination hearing to DHS's failure to provide services, which is a waiver of that issue on appeal.

---

failure-to-remedy ground because those were not the reasons the children had been removed. We agree that if DHS had wanted to use this evidence to support termination, it should have asserted the subsequent-factors ground as a basis for termination, but it did not do so.

12

2018 Ark. App. 565, at 11, 567 S.W.3d at 509. Here, Brandy did not appeal from the finding in the permanency-planning order that DHS had made reasonable efforts to provide family services. Furthermore, she made no objection at the termination hearing that DHS had failed to provide services; therefore, she has waived that issue on appeal. Therefore, we affirm the termination of Brandy's parental rights.

### III. *Termination of Willie's Parental Rights*

Willie argues on appeal that the circuit court erred in terminating his parental rights on the twelve-months-failure-to-remedy ground because he was the nonoffending parent; he points out that the children were removed from Brandy's custody, and he was not responsible for the conditions that caused removal. We agree that the circuit court erred in terminating his parental rights on this ground. When the children were taken into DHS custody—April 2023—Willie was in jail awaiting trial on rape charges, and he had been in jail since January 2023. The children were adjudicated dependent-neglected due to environmental neglect as the result of Brandy's failure to provide safe and appropriate housing, and the circuit court specifically found Willie was a non-offending parent.

This court reversed and remanded when faced with a similar situation in *Lewis v. Arkansas Department of Human Services*, 2012 Ark. App. 154, 391 S.W.3d 695. In *Lewis*, the children's father made the same argument that Willie makes now: the children were in their mother's custody when they were removed for inadequate supervision, environmental neglect, and the mother's alcohol abuse; he was not living with the mother at the time of removal; and he was not responsible for the conditions that caused their removal. As in

13

*Lewis*, where the children could not be placed with the father given his own issues with unstable housing, unemployment, and drug use, the children here could not be placed with Willie because he was in jail, but that was not the issue that caused removal of the children. He was not responsible for the environmental neglect that caused the removal of the children—Brandy was. "If the ground, as worded, does not fit the facts of the case, it should not be used." *Jones v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 632, at 5.

Willie acknowledges the second ground pled with regard to him in the petition to terminate parental rights—that he is sentenced in criminal proceedings for a period of time that would constitute a substantial period of the children's lives—and that this court, on de novo review, can affirm a termination that is based on a ground pled but not stated in the circuit court's order. However, he argues that the termination of his parental rights cannot be affirmed on this ground, either; we agree.

DHS asserted in the termination petition that Willie was incarcerated on charges of rape of a minor, and that "due to the serious nature of the allegations, it is likely that by the time the termination hearing is held, he will be sentenced to the Arkansas Department of Corrections for a substantial period of time." However, at the time of the termination hearing and the entry of the order terminating parental rights, Willie's criminal charges had not yet been adjudicated. Therefore, he had not been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the children's lives, and this ground cannot serve as a basis for terminating his parental rights.

Affirmed in part; reversed and remanded in part.

HARRISON and TUCKER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Brandy Smith.

*Streit Law Firm, PLLC*, by: *Jonathan R. Streit*, for separate appellant Willie Smith.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.