
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-931

| | |
|---|---|
| CHARMELL TILLMAN<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br>APPELLEES | **Opinion Delivered** February 25, 2015<br><br>APPEAL FROM THE LONOKE<br>COUNTY CIRCUIT COURT<br>[NO. JV-2013-145]<br><br>HONORABLE BARBARA ELMORE,<br>JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

The Lonoke County Circuit Court terminated the parental rights of appellant Charmell Tillman to her children, F.B. (DOB: 2-22-07), M.B.1 (DOB: 6-25-08), M.B.2 (DOB: 7-16-09), and E.B. (DOB: 7-5-11).[1] Tillman argues that there was insufficient evidence to support the termination. We affirm.

## I. *Background*

On April 23, 2013, Tillman was involved in a domestic dispute with her boyfriend, and she and the boyfriend were arrested. The Arkansas Department of Human Services (DHS) discovered that Tillman had left her four sons unsupervised in a place fraught with danger. An ex parte order for emergency custody was entered, and the children were subsequently adjudicated dependent-neglected on the basis that Tillman had failed to protect

---

[1]The trial court also terminated the parental rights of the children's legal father, Fredrick Burgess, Jr.; however, he is not a party to this appeal.

her children, to which Tillman stipulated. DHS was ordered to provide her with services, including parenting classes and counseling, and she was ordered to maintain stable employment and housing, submit to a forensic psychological evaluation, comply with the terms of her case plan, cooperate and maintain contact with DHS, attend supervised visits, and demonstrate improved parenting. The adjudication order also provided that Tillman was not to use controlled substances, was subject to random drug screens, and would obtain a drug-and-alcohol assessment if she tested positive. Review orders were entered July 23, 2013; December 3, 2013; January 6, 2014;[2] and March 11, 2014. DHS and the attorney ad litem filed a joint petition for termination of parental rights on April 22, 2014, alleging two grounds: Ark. Code Ann. § 9-27-341(b)(3)(B)(i) & (vii). Following a hearing, a permanency-planning order was entered changing the goal from reunification to adoption. A termination hearing was held on June 24, 2014, and continued until June 30, 2014, at 1:00 p.m.[3]

Constance Collier, a counselor at Centers for Youth and Families, testified that she received a referral for counseling in November 2013. Collier testified that she immediately contacted Tillman and scheduled her intake appointment for December 2013. Tillman cancelled at the last minute. Collier attempted contacting Tillman without success. Collier

---

[2]The trial court reserved the question of whether DHS had made reasonable efforts to rehabilitate the mother, and DHS was ordered to ensure that referrals were made for counseling and medication management. At the next hearing, the trial court found that DHS had made reasonable efforts to provide family services.

[3]While Tillman was present at the June 24 hearing, she was not at the June 30 hearing. On the date of the second hearing, Tillman contacted counsel at 12:47 p.m. saying that she did not have transportation. Counsel requested that Tillman be permitted to attend by phone, but that request was denied.

SLIP OPINION

was able to schedule an appointment in January 2014, but Tillman did not show up. It was rescheduled, but Tillman cancelled. Collier testified that she offered to meet Tillman anywhere but was told that it was "not a convenient time." The appointment was rescheduled for later in January, but Tillman did not show up. Collier attempted to contact Tillman in February 2014, but Tillman did not return her calls. In late March 2014, Tillman called to make an appointment. By then, Collier was no longer providing counseling services in Lonoke County.

Shiann Metheny, a counselor at Centers for Youth and Families, testified that she received a referral for counseling Tillman in early April 2014. She scheduled an appointment with Tillman at her mother's house. Even though the appointment had been confirmed earlier, no one answered the door. Metheny finally met Tillman for counseling on May 28, 2014. Metheny testified that Tillman had kept all of her scheduled appointments and was making progress.

Dr. Paul Deyoub, a forensic psychologist, testified that he evaluated Tillman on August 22, 2013, and that her background was one of "chaos and dysfunction." Dr. Deyoub testified that Tillman's scores were extreme for depression and that she needed medication and counseling. He stated that she had difficulty managing her children and would need parenting classes. He also stated that Tillman lacked stability. Dr. Deyoub stated that Tillman was living with her stepfather but that it was not an appropriate home because Tillman had alleged that the stepfather physically abused her as a juvenile. He stated that Tillman needed to have her own home, along with a job. According to Dr. Deyoub, Tillman had to address

3

all of those issues before she could take care of her children. Dr. Deyoub testified that the longer Tillman failed to follow his recommendations, the prognosis would diminish. Dr. Deyoub stated that Tillman denied any drug abuse. According to Dr. Deyoub, if Tillman had failed drug screens, that would be "a tremendous setback."

Lakisha Tatum, a caseworker for DHS, testified that she began working with Tillman in mid-October 2013. Tatum conceded that the prior caseworker, who was no longer with DHS, had left the case in a confusing state and failed to provide all of the necessary information such that a new case plan had to be developed in November 2013. Although it appeared as though Tillman had completed parenting and anger-management classes, she had not received any certificates of completion. Tatum testified that, while Tillman had worked at a nursing home when the case was opened, she failed to maintain stable employment. Although she worked at Sonic for a time and styled hair, she presented no pay stubs. Tillman lived with her mother or father throughout the case. She stated that, while Tillman attended most of her supervised visits with the children, she had missed visits due to lack of transportation, even though DHS offered transportation if she gave sufficient notice.

Tatum testified that Tillman tested positive for THC on May 10, 2013; February 18, 2014; March 12, 2014; and March 18, 2014. Tillman completed her first drug-and-alcohol assessment on June 4, 2013, and the recommendations were parenting classes, counseling, and five Access to Recovery (ATR) classes. Tillman attended only two ATR classes in June 2013. A second drug-and-alcohol assessment was scheduled for January 19, 2014, but Tillman did not show up. A hair-follicle test completed on January 28, 2014, was positive

for cocaine and THC. Tatum testified that she offered inpatient treatment for substance abuse, but Tillman refused and insisted that she did not have a problem with cocaine. In early April 2014, Tatum inquired about outpatient drug treatment and was informed that Tillman was already an ATR client but that her chart had been closed. In June 2014, Tatum learned that the Family Service Agency had no more funds for ATR clients.

Tatum further testified that the first referral for counseling was made August 1, 2013, but that the counselor needed additional information in November 2013. She agreed that DHS was ordered to provide medication management in October 2013 and again in December 2013; however, DHS could not make the appointment with a doctor until the doctor heard from Tillman's therapist. Tatum conceded that, since May 2014, when Tillman began counseling, nothing had been done to follow up on the medication–management order.

Stacy Johnson, a DHS caseworker, testified that she assisted with the children's transportation to visits with Tillman. Johnson testified that at one of the visits, Tillman had spanked E.B. against court orders. According to Johnson, Tillman said that "she don't give a damn what the judge say." Johnson took E.B. to her office to calm him down, and Tillman tried to grab the child from her arms. Johnson testified that the police were called.

Deborah Kee, a DHS caseworker who supervised visits, testified that, after Tillman slapped E.B. on the arm when he would not let her wipe his nose, Kee stopped the visits. Kee then testified to circumstances under which Tillman had missed visits.

Kathleen Armstrong, an adoption specialist, testified that the boys were young and had



no major medical issues. She stated that there were fifteen families who wanted to adopt the four boys together.

## II.  *Trial Court's Findings*

In the order entered August 1, 2014, the trial court terminated Tillman's parental rights based on the two grounds as alleged in DHS's petition: (1) the juveniles have been adjudicated dependent-neglected and have continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied,[4] and (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the parent's custody is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent factors or issues or rehabilitate the parent's circumstances that prevent the placement of the juveniles in the custody of the parent.[5] The trial court further found that it was in the best interest of the children to terminate Tillman's parental rights considering both the likelihood that the children would be adopted and the potential harm caused by returning the children to her custody.

## III.  *Standard of Review*

Termination-of-parental-rights cases are reviewed de novo. *Allen v. Ark. Dep't of*

---

[4]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2013).

[5]Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*).

*Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2013). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9–27–341(b)(3)(B). However, proof of only one statutory ground is sufficient to terminate parental rights. *Allen*, *supra*.

SLIP OPINION

IV. *Discussion*

Tillman argues that the trial court erred in finding that she failed to remedy the conditions that caused removal because DHS failed to make reasonable efforts to provide services to rehabilitate her and correct the conditions that caused removal. A parent's failure to appeal from determinations that DHS made reasonable efforts to rehabilitate precludes that argument in an appeal from the termination of parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205. Tillman did not challenge the trial court's findings that DHS had made reasonable efforts to rehabilitate her, even at a point when the trial court may have agreed with her. We cannot review the reasonable-efforts question for the first time on appeal. *Id.*

In any event, while we agree that DHS contributed to the delay in receiving some of the services, Tillman takes no responsibility for her actions in thwarting the service providers' attempts to contact her and failing to participate in services she had started. Moreover, Tillman received some services early on in the case, including a psychological evaluation, drug tests, a drug-and-alcohol assessment, and outpatient drug classes. Despite DHS's failures, the evidence shows that Tillman did not attempt to complete many services until after the petition for termination was filed. Evidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place. *Emmons v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 541. Termination of Tillman's parental rights could be affirmed on this ground alone.

SLIP OPINION

Next, Tillman argues that the trial court erred in finding that she manifested the incapacity or indifference to remedy the subsequent factors and issues that arose. Tillman further argues that the trial court erred in not giving her additional time because her failure to complete services was due to DHS's poor case planning and funding deficiencies. When Tillman tested positive for cocaine in January 2014, DHS offered her inpatient drug treatment, but Tillman refused. Outpatient drug treatment was available as early as June 2013, as Tillman attended two ATR classes; however, Tillman failed to attend the remaining classes and delayed seeking additional treatment until April 2014. By then, ATR had closed her chart, likely due to noncompliance, and then temporarily ran out of funds. Tillman's failure to take advantage of the drug treatment offered and her continued use of drugs, as late as March 18, 2014, demonstrate her indifference to remedying the subsequent factors. *See, e.g.*, *Allen, supra*. Regarding Tillman's request for additional time, completion of the case plan is not determinative; rather, what matters is whether completing the requirements of the case plan achieved the intended result of making a parent capable of caring for the child. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. Tillman had fourteen months to remedy her situation, but she did not take advantage of the services that were offered. Her children should not have to remain in limbo any longer. The overriding intent of the legislature is to provide permanency in the life of a child. *Id.*

Finally, Tillman does not challenge the adoptability factor of the best-interest analysis, but she contends that there was no potential harm in returning the children to her. We disagree. The potential-harm evidence must be viewed in a forward-looking manner and

9



considered in broad terms. *B.H.1 v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 532. Tillman's continued use of drugs showed potential harm to the children. *See, e.g.*, *Allen*, *supra*. We hold that the trial court did not clearly err in terminating Tillman's parental rights.

Affirmed.

GRUBER and GLOVER, JJ., agree.

*Dusti Standridge*, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.