Cite as 2019 Ark. App. 542

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV–19–407

|  |  |
|---|---|
| | **Opinion Delivered:** November 13, 2019 |
| CATHERINE HARDIMAN<br>APPELLANT | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. 14JV-15-81] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**WAYMOND M. BROWN, Judge**

Counsel for appellant Catherine Hardiman brings this no-merit appeal from the Columbia County Circuit Court's order terminating appellant's parental rights to her sons, D.H.1 (DOB: 02/27/05) and D.H.2 (DOB: 05/11/06). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*[1] and Arkansas Supreme Court Rule 6–9(i), appellant's counsel has filed a motion to withdraw and a no-merit brief contending that there are no meritorious issues that would support an appeal. The clerk of this court mailed a certified copy of counsel's brief and motion to be relieved to appellant, informing her of her right to file pro se points for reversal, which she has elected to do. We affirm the termination order and grant counsel's motion to withdraw.

---

[1]359 Ark. 131, 194 S.W.3d 739 (2004).

This court reviews termination-of-parental-rights cases de novo.[2] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[3] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[6]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[7] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.[8]

---

[2] *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[3] *Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2017).

[8] Ark. Code Ann. § 9–27–341(b)(3)(B).

Proof of only one statutory ground is sufficient to terminate parental rights.[9] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[10] The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[11]

Arkansas Supreme Court Rule 6–9(i) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal.[12]

On October 26, 2015, the Arkansas Department of Human Services (DHS) was contacted after a call had been made to the child-abuse hotline. Following an investigation, DHS exercised a seventy-two-hour hold on D.H.1 and D.H.2, removing them from the

---

[9]*Tillman, supra.*

[10]*Id.*

[11]Ark. Code Ann. § 9-27-341(a)(3).

[12]Ark. Sup. Ct. R. 6–9(i)(1)(A).

3

legal custody of their mother, appellant, and the physical custody of their paternal grandmother, Debbie Daniels. On December 4, D.H.1 and D.H.2 were adjudicated dependent-neglected due to physical abuse by an aunt and failure to protect by the grandmother. The goal of the case was set as reunification.[13]

Following the October 7, 2016 permanency-planning hearing, the goal of the case was changed to authorize a plan to obtain a permanent custodian, including custody with a fit and willing relative. The circuit court ordered DHS to work with Daniels toward achieving the goal of permanent custody after finding appellant was not in compliance with the case plan or orders of the court. At a second permanency-planning hearing held on November 3, 2017, the circuit court found appellant unfit and unable to protect D.H.1 and D.H.2's health and safety if returned to her. The court further found that despite reasonable efforts by DHS, appellant had not been "involved in the case plan." Consequently, the goal of the case was changed from reunification to termination of parental rights and adoption.

DHS filed a petition for termination of parental rights on December 12, 2018, alleging five grounds for termination. Following a hearing, the circuit court granted DHS's petition to terminate appellant's parental rights based on two of the grounds alleged in the

---

[13]On April 13, 2016, DHS removed three siblings (K.H., J.A., and T.H.) from the custody of appellant; they were adjudicated dependent-neglected due to sexual abuse of K.H. by appellant's boyfriend, Anthony Pugh. (At the December 4, 2015 adjudication hearing, Anthony Pugh was found to be the legal father of D.H.1, D.H.2, and T.H.) An agreed temporary order was entered on September 16, 2016, placing K.H. and J.A. in the temporary custody of a relative. T.H. was placed in the temporary custody of a different relative on April 12, 2017. On July 7, 2017, a review, permanent-custody, and partial-closure order was entered placing K.H., J.A., and T.H. in the permanent custody of their respective temporary custodians and closing the case as to them.

petition: (1) aggravated circumstances[14] and (2) abandonment.[15]  A termination order was entered on February 13, 2019.

Evidence presented at the January 18, 2019 termination hearing supports the abandonment ground for termination.  Appellant testified that she had not attended any court hearings nor had she seen D.H.1 and D.H.2 since July 2017.[16]  Although she claimed she had no transportation, she admitted she was able to get rides to other places she wanted to go; however, she claimed that DHS was on the other side of town, which was just too far.  Additionally, appellant claimed that she thought the case was closed despite the fact that she was present at the July 2017 hearing at which a future court date was set.  Appellant went more than a year without seeing her children and she contacted DHS on January 16, 2019, only two days prior to the termination hearing.  Abandonment is defined as the failure of a parent to support or maintain regular contact with a child without just cause.[17]  Additionally, the termination statute does not require that the abandonment last for any particular length of time.[18]

Evidence presented at the termination hearing also supports the circuit court's best-interest finding.  Adoption specialist Crystal Williams testified that D.H.1 and D.H.2 are

---

[14]Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*.

[15]Ark. Code Ann. § 9-27-341(b)(3)(B)(iv).

[16]Although appellant testified that she had not seen her children since July 2017, the termination petition alleged that she had not visited them since November 2017.

[17]Ark. Code Ann. § 9-27-303(2)(A)(ii).

[18]*Norris v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 571, 567 S.W.3d 861.

5

adoptable. She stated that the boys do not have any medical or physical barriers to adoption and that they are a match for one-hundred-nine possible adoptive families. The testimony of an adoption specialist is sufficient to support a circuit court's adoptability findings.[19] As for potential harm, appellant was noncompliant with the case plan and court orders. A parent's failure to comply with court orders is sufficient evidence of potential harm to a child.[20]

In her pro se points for reversal, appellant asserts that she loves her sons and asks for another chance to be part of their lives. She submits that her other children want to see their brothers because they are a family. Nevertheless, as previously discussed, the circuit court's termination decision was supported by sufficient evidence, therefore her pro se points provide no grounds for reversal.

Having carefully examined the record and counsel's brief, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the termination of appellant's parental rights to D.H.1 and D.H.2 and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and MURPHY, JJ., agree.

*Katalina Wyninger*, for appellant.

---

[19]*Whitaker v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 61, 540 S.W.3d 719.

[20]*Bell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 446, 503 S.W.3d 112.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.