Cite as 2022 Ark. App. 432

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-22-256

|  |  |
|---|---|
| JESSICA CASEY | **Opinion Delivered** October 26, 2022 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TENTH DIVISION [NO. 60JV-20-304] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE SHANICE JOHNSON, JUDGE |
| APPELLEES | |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Counsel for appellant Jessica Casey brings this no-merit appeal from the Pulaski County Circuit Court's order terminating appellant's parental rights to her son, MC (minor child) (DOB: 02/27/2020). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*[1] and Arkansas Supreme Court Rule 6-9(j),[2] appellant's counsel has filed a motion to withdraw and a no-merit brief contending that there are no meritorious issues that would support an appeal. The clerk of this court mailed a certified copy of counsel's brief and motion to be relieved to appellant, informing her of her right to file pro se points for reversal under Arkansas Supreme Court Rule 6‒9(j)(3), which she has elected not to do. We affirm the termination order and grant counsel's motion to withdraw.

---

[1]359 Ark. 131, 194 S.W.3d 739 (2004).

[2](2021).

On February 29, 2020, the Arkansas Department of Human Services ("the Department") responded to a report that the minor child tested positive for drugs at birth. The family service worker's affidavit stated that she

> responded to a report for Garrett's Law-Newborn-Illegal Substance Exposure. The report stated that, [MC] was positive for amphetamine, methamphetamine, and benzos. I met with the mother Jessica Casey at Baptist Health Hospital in Little Rock, AR. Ms. Casey admitted to using methamphetamine since she was 15 years old. Ms. Casey stated the only time she has not used is when she was incarcerated. Ms. Casey stated that she will be going to jail upon her release from the hospital, due to theft charges and probation revocation. Ms. Casey stated she had arranged for her cousin Krystal Phillips to care for [MC] prior to delivery, because she currently has custody of her other 5 children.

MC was removed from appellant's custody[3] on March 4 by the Department because both appellant and MC tested positive for amphetamine, methamphetamine, and benzos.[4] An ex parte order for emergency custody was entered on March 9, finding that removal from appellant's custody was in MC's best interest and necessary to protect his health and safety. Following the March 12 probable-cause hearing, the court found probable cause existed at the time of removal and probable cause continued such that it was in MC's best interest to remain in the Department's custody. On April 9, MC was adjudicated dependent-neglected as a result of neglect—Garrett's Law—and parental unfitness. In a disposition order entered on April 24, the court set the case goal as reunification with two concurrent goals: (1) to obtain guardianship with a fit and willing relative or (2) to obtain a permanent custodian, including permanent custody with a fit and willing relative. Appellant was ordered to cooperate with the Department; to notify the Department of changes to

---

[3]At the time of removal, J.H., Jr. remained at Baptist Health Medical Center due to respiratory issues and did not have an anticipated discharge date.

[4]Appellant has an extensive history with the Department due to her drug use, which resulted in her losing custody of five other children as well as the death of an infant.

her contact information and employment status; to notify the Department for transportation assistance for purposes of achieving the case-plan goals, services, and court orders; to submit to a psychological evaluation and comply with the recommendations; to attend individual and family counseling; to take her medications as prescribed by a physician; to abstain from use of illegal drugs, alcohol, and prescription medications not prescribed to her; to submit to a drug-and-alcohol assessment and comply with the recommendations; to submit to random drug screens; to complete parenting classes and demonstrate the ability to appropriately apply the parenting skills; to obtain and maintain stable housing and stable employment or income; to maintain a clean, safe home; to demonstrate the ability to keep the juvenile safe; and to attend all medical appointments set up for the juvenile.

Following the August 20 review hearing, the court entered an order finding the following:

The specific safety concerns that prevent a trial home placement or prevent the juvenile from being returned to mother or father are: mother is still using illegal substances. On August 18, 2020, mother told Teresa Bunche, the DHS Supervisor who is also the caseworker on this case, that she is continuing to use meth, and she last used meth the day prior. The reasons for the juvenile's removal continue to exist.

The circuit court additionally found that appellant had substantially complied with the case plan and court orders but had made no progress toward alleviating or mitigating the causes of MC's removal from her custody. The Department was found to have made reasonable efforts to provide family services toward the case-plan goal of reunification. Further, the court granted appellant's request for in-person visitation with MC.

Another review hearing was held on December 3. The court stated that MC could not be returned to appellant because she resided in chemical-free living, and he cannot live with her at that

3

placement. The court again found appellant had substantially complied with the case plan and court orders.

> Specifically, she has attended most visits with the juvenile and those visits have been appropriate and have gone well. She did not show up for some visits and did not give notice. She did not show up for other visits and did give notice and she was sick for other visits. She resides in Chemical Free housing where she has been since September 21, 2020, where she is participating in intensive outpatient treatment, and she has completed six (6) individual sessions and seventeen (17) group counseling sessions. Her anticipated discharge date is December 30, 2020. She submitted to a drug screen on August 21, 2020 at RCA, which was positive for methamphetamine. Seven (7) other drug screens she submitted to at RCA were negative and the two (2) drug screens she submitted to at DHS were also negative. She attends AA/NA meetings. She participates in individual counseling and domestic abuse counseling. She is unemployed and does not have any income. Mother has demonstrated some progress towards the goals of the case plan. She has made some progress towards alleviating or mitigating the causes of the juvenile's removal from the home.

On January 31, 2021, appellant was arrested on multiple charges, including possession of methamphetamine. The permanency-planning hearing scheduled for February 25 was continued due to appellant's incarceration in the Pulaski County Detention Center, and there had not been an order submitted to allow appellant to attend a Zoom hearing. The permanency-planning hearing was held on March 4. The circuit court found that appellant partially complied with the case plan and court orders. The court noted that appellant was visiting with MC prior to her incarceration; however, "she was caught huffing and was kicked out of her chemical free housing." The court further observed that appellant was currently incarcerated and had no stable income or employment. The court found that appellant had made no progress toward alleviating or eliminating the causes of removal. Consequently, the goal of the case was changed to adoption or guardianship with a fit and willing relative. The circuit court additionally provided,

> While the Court is authorizing a plan for adoption, it is noted the mother has worked diligently toward case plan goals and that relapse is part of recovery. The Court also takes judicial notice of prior court orders of the mother's substantial progress. The court is setting

4

the TPR hearing for August to give the mother an opportunity to be released, if she is indeed set to be released in April. It will also give the Department an opportunity to determine whether or not to get the mother into another treatment program and have the time to make the service happen.

A review hearing was held on August 9. The review order from that hearing was entered on November 29. In that order, the circuit court found the case plan was "barely moving towards an appropriate permanency plan." The court noted that MC could not be returned to appellant's custody because she was incarcerated and awaiting transfer to a larger prison facility where she would serve the remainder of her five-year sentence. The court stated that appellant had actively participated in services prior to December 2020 but had failed to make progress since that time.

The Department filed a petition for termination of parental rights on April 15, 2021; that petition was later dismissed. The Department refiled the termination petition on September 7 following the August 9 review hearing, alleging multiple grounds for termination. Following the November 29 termination-of-parental-rights hearing, appellant's parental rights to her son, MC were terminated. The termination order was entered on February 9, 2022.

This court reviews termination-of-parental-rights cases de novo.[5] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[6] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[7] A finding is clearly erroneous when, although there is

---

[5]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[6]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[7]*Id.*

evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[8] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[9]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[10] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.[11] Proof of only one statutory ground is sufficient to terminate parental rights.[12] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[13] The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return

---

[8]*Id.*

[9]*Id.*

[10]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021).

[11]Ark. Code Ann. § 9-27-341(b)(3)(B).

[12]*Tillman*, *supra.*

[13]*Id.*

to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[14]

Arkansas Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal.[15]

Counsel contends that there was sufficient evidence presented at the termination hearing to support the grounds for termination, and any challenge to the circuit court's finding would be frivolous. Among the multiple grounds found by the circuit court to support the termination of appellant's parental rights was the ground of substantial incarceration. Undisputed evidence was presented to establish that on June 8, 2021, appellant was sentenced to serve five years' incarceration. MC was removed from appellant's custody immediately following his birth. When the termination hearing took place, he had already been out of her custody for nearly two years. Due to her prison sentence, MC was facing another five years in foster care without achieving permanency. Although appellant provided testimony that she expected to be released within ten months from the termination hearing date, we have held that it is the length of the prison sentence that controls, not

---

[14]Ark. Code Ann. § 9-27-341(a)(3).

[15]Ark. Sup. Ct. R. 6-9(j)(1)(A).

whether the parent is eligible for an early release through parole.[16]  In *Hill v. Arkansas Department of Human Services*,[17] we held that a three-year prison sentence constituted a substantial period of a two-year-old's life and sufficiently supported termination of the parent's parental rights.  Similarly, appellant's five-year sentence constitutes a substantial period of not quite two-year-old MC's life.  The circuit court's finding based on this incarceration ground for termination is supported by sufficient evidence.

Counsel further explains that evidence presented at the termination hearing also supports the circuit court's best-interest finding.  Department caseworker and supervisor Lakisha Tatum testified that there are no impediments to MC being adopted.  A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.[18] As for potential harm, the circuit court found that MC's health and safety would be at risk if returned to appellant due to her incarceration and inability to care for him.  She was serving a five-year prison sentence, thereby making it impossible for MC to be returned to her custody.  We have stated that failure to live a law-abiding life supports a finding of potential harm.[19]

In addition to the termination of appellant's parental rights, counsel identifies one adverse ruling made at the termination hearing.  At the hearing, appellant was asked how many children she had and how many of those children are in her custody.  Counsel objected to the relevance of the

---

[16]*See* Ark. Code Ann. § 9-27-341(b)(3)(B)(viii).

[17]2012 Ark. App. 108, 389 S.W.3d 72.

[18]*Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540.

[19]*Blasingame v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 342, 582 S.W.3d 873.

questioning. The Department responded, "Your Honor, almost every single appellate opinion in [dependency-neglect] hearings states that past behavior is a predictor of future harm—potential harm for children, so I think it's extremely relevant." The circuit court overruled the objection. Appellant went on to testify regarding her other children, none of which she retained custody of, and the death of an infant—all stemming from her drug addiction. Past behavior is a good indicator of future behavior.[20] Therefore, past behavior is relevant to determining the risk of potential harm.[21] Consequently, the adverse ruling affords no meritorious ground for reversal.[22]

Having carefully examined the record and counsel's brief, we conclude that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and that the appeal is wholly without merit. Accordingly, we affirm the termination of appellant's parental rights to MC and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.

---

[20]*King v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 464, 562 S.W.3d 226.

[21]*Id.*

[22]*See Taylor v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 227, at 3–4 (recognizing that, even in termination-of-parental-rights cases, we will not consider arguments made for the first time on appeal and that parties are bound by the scope of the arguments presented at the trial level).