Cite as 2024 Ark. App. 324

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-23-835

| | |
|---|---|
| STONEY LEE BARNOSKIE II<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** May 15, 2024<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17JV-22-82]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>REVERSED AND REMANDED |

## WAYMOND M. BROWN, Judge

Appellant Stoney Barnoskie appeals from the Crawford County Circuit Court's order terminating his parental rights to Minor Child ("MC"). On appeal, Barnoskie argues that the circuit court erred in terminating his rights to MC because the statutory grounds for termination of his parental rights had not been met. Specifically, Barnoskie contends that there were no findings as to "putative parents" as required to support termination on the only statutory ground alleged by appellee Arkansas Department of Human Services ("DHS"). Barnoskie further argues that the circuit court erroneously terminated his parental rights on other grounds not pled in the termination petition. He additionally challenges the circuit court's finding that termination is in MC's best interest. We reverse and remand.

On May 24, 2022, DHS received a call stating that Dawn Stockman had failed to pick up her children, MC and MC's sibling, from daycare at closing time. Efforts to contact Stockman failed.

During a subsequent welfare check of the family's home, police officers found Stockman and Barnoskie passed out under the influence of heroin. Officers escorted Barnoskie back to his residence; Stockman attempted to enter a detox program but was unsuccessful. On June 1, DHS removed MC and his sibling from the physical and legal custody their mother, Stockman, due to parental unfitness. On June 3, DHS filed a dependency-neglect petition and a petition for emergency custody stating that the juveniles were at substantial risk of serious harm as a result of the caretaker's substance abuse and emotional instability, which affects her ability to supervise, protect, or care for the juveniles. Barnoskie was identified in both the caption and body of the petition as MC's putative parent. An ex parte order for emergency custody was entered on June 3, placing MC in the custody of DHS. A probable-cause and adjudication order was entered on September 7, finding that probable cause for the children's removal existed and continued to exist. Barnoskie was again identified as the putative father and was found to be unfit for custody of the juveniles because he contributed to the causes of removal and the dependency-neglect. The circuit court found that the action is subject to the Indian Child Welfare Act (ICWA) because Barnoskie is of Cherokee descent.

At the September 21 review hearing, the circuit court ordered that guardianship remain the case goal and that the juveniles remain in the custody of DHS. The parents were found to have not complied with the case plan and orders of the court. The parents were ordered to comply with the case plan and court orders; cooperate with DHS and the service providers; maintain communication with DHS; obtain and maintain stable and appropriate housing, transportation, employment, and income; notify DHS of any significant changes or events; and visit regularly and appropriately with the juveniles.

On November 14, a letter from the Cherokee Nation to DHS was filed with the court, stating that the juveniles were identified as "Indian child/children," and the protections of the ICWA[1] apply to them.

A second review hearing was held on February 15, 2023. The order stated that "Barnoskie is not a parent or putative parent to" MC's sibling. Barnoskie was still identified in the caption and body of the review order as MC's putative parent. The order states that Barnoskie "is a putative parent of [MC] because he alleges to be or is alleged to be the biological parent of that juvenile." The order noted that Barnoskie was served with the original petition on June 13, 2022. The circuit court noted that Barnoskie "has not engaged in services." The parents were again found to have not complied with the case plan and court orders. "[P]utative-parent [Barnoskie] has not visited with the juveniles nor engaged in case plan services." The goal of the case was changed to termination of parental rights with a concurrent goal of custody with Stockman or guardianship.

On April 4, 2023, DHS filed a petition to terminate Barnoskie's parental rights to MC. In the petition, Barnoskie was identified as "a putative parent of [MC] because he is alleged or alleges to be that juvenile's biological parent; he is a member of the Cherokee Nation." Further, the termination petition provided:

> The Department is also seeking a finding that the putative parent, Stoney Lee Barnoskie, II, has failed to establish or maintain meaningful contacts with the juvenile [MC]; that Mr. Barnoskie was named as a putative parent in the original petition for dependency-neglect; that Mr. Barnoskie was served with the original petition for dependency-neglect; that Mr. Barnoskie received notice of these proceedings via service of process, and has attended several hearings herein; and that Mr. Barnoskie has otherwise expressed enough interest in the juvenile and in these proceedings that his putative rights have attached; and the Department then seeks the termination of Mr. Barnoskie's rights pursuant to Ark. Code Ann. § 9-27-

---

[1]25 U.S.C. § 1903(4).

341(b)(3)(B)(x), which will not be considered an involuntary termination per said statutory language.  Mr. Barnoskie is not represented by counsel at this time.

In addition, DHS alleged that pursuant to Arkansas Code Annotated section 9-27-341(ix), Barnoskie's parental rights to MC should be terminated due to the involuntary termination of his parental rights to a child in a separate case and that termination is in MC's best interest.

Following the September 20 hearing, the circuit court entered an order terminating Barnoskie's parental rights to MC.  He now appeals from the termination order.[2]

This court reviews termination-of-parental-rights cases de novo.[3]  Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[4]  The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[5]  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[6] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[7]

---

[2]The parental rights of MC's mother, Dawn Stockman, were also terminated; however, she voluntarily relinquished her parental rights and is not a party to this appeal.

[3]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[4]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[5]*Id.*

[6]*Id.*

[7]*Id.*

4

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[8] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist.[9] Proof of only one statutory ground is sufficient to terminate parental rights.[10] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[11] The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[12]

On appeal, Barnoskie first contends that the circuit court committed reversible error in terminating his parental rights to MC on grounds that were not pled in the termination petition. As noted above, DHS filed a petition to terminate Barnoskie's parental rights to MC based on both (1) the ground for termination applicable to putative parents pursuant to Arkansas Code Annotated

[8]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2023).

[9]Ark. Code Ann. § 9-27-341(b)(3)(B).

[10]*Tillman, supra.*

[11]*Id.*
[12]Ark. Code Ann. § 9-27-341(a)(3).

5

section 9-27-341(b)(3)(B)(x); and (2) the aggravated-circumstances ground that, in a separate case, his rights were involuntarily terminated to another child—MC's sibling. However, the circuit court, in its order, terminated Barnoskie's parental rights to MC on the following grounds: (1) failure to remedy; (2) subsequent factors; and (3) aggravated circumstances. Specifically, as to the aggravated-circumstances finding, the circuit court found that MC

> has been in care for more than two (2) years, and the parent, Stoney Lee Barnoskie, II, has failed and refused to comply with the case plan and the orders of this Court, and that he has failed and refused to diligently work toward reunification with the juvenile; and all such that the Court finds that there is little likelihood that further services to the parent will result in a successful reunification within a reasonable period of time as viewed from the perspective of the juvenile.

None of the grounds relied on to support termination of Barnoskie's parental rights to MC were pled in the termination petition filed by DHS. Barnoskie urges that this is clearly erroneous and requires reversal of the termination. We disagree. In our de novo review, we may address the other grounds alleged in DHS's petition.[13] The de novo standard opens the entire record for our review.[14]

We do, however, find merit in Barnoskie's argument that the circuit court erred in terminating his parental rights on the basis of any grounds—pled or not pled—without first making the requisite findings that he had established paternity and was MC's parent or that, as a putative parent, he demonstrated significant contacts.

Pursuant to Arkansas Code Annotated section 9-27-303(48),[15] "putative father" means "any man not deemed or adjudicated under the laws of the United States to be the biological father of a

---

[13]*See Kazee v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 78, 684 S.W.3d 279.

[14]*Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356.

[15](Repl. 2020).

juvenile who claims to be or is alleged to be the biological father of the juvenile." A court may consider the termination of the rights of a putative parent under section 9-27-341 if the court finds that the putative parent has established significant contacts, and the rights of the putative parent as a putative father have attached.[16] During the pendency of the case, from the outset through the filing of the termination petition, Barnoskie was always identified as MC's putative parent. DHS concedes that, despite its request at the close of the termination hearing that the court make a finding regarding whether Barnoksie made significant contacts with MC and, consequently, his rights attached, the court failed to do so. Without a finding whether Barnoskie's parental rights attached to MC, the circuit court's termination of his rights based on the ground applicable to a putative parent was erroneous.

Pursuant to Arkansas Code Annotated section 9-27-303(41), "parent" means:

(A) A biological mother;

(B) An adoptive parent; or

(C) A man:

(i) To whom the biological mother was married at the time of conception or birth;

(ii) Who has signed an acknowledgement of paternity pursuant to § 9-10-120;

(iii) Who has been found by a court of competent jurisdiction to be the biological father of the juvenile or to have otherwise established paternity; or

(iv) Who is listed as the parent on the birth certificate of the child[.]

---

[16]Ark. Code Ann. § 9-27-325(n)(2)(A)(ii) (Supp. 2023).

Although the termination order provides that Barnoskie "is a parent to [MC]," there was no evidence presented at the termination hearing to support the finding. Barnoskie was never married to MC's mother, he had not signed an acknowledgement of paternity, he had not been found by the court to be MC's biological father or otherwise established paternity, and he testified that he was not listed on MC's birth certificate.

In *Tovias v. Arkansas Department of Human Services*,[17] this court reversed a termination order because there was insufficient evidence to support a finding that Tovias was a "parent." In a permanency-planning order, the circuit court had found Tovias to be the "legal father"; however, there was no basis in the record to support the finding. Here, throughout the case, Barnoskie was identified only as MC's putative father. No evidence was presented demonstrating that the issue of MC's paternity had been resolved.

Because the statutory requirements to terminate the parental rights of a "putative parent" were not met, nor was the record sufficient to establish that Barnoskie was a "parent" to MC, we hold that the circuit court erred in terminating his parental rights. Therefore, we find it unnecessary to address Barnoskie's remaining argument challenging the circuit court's best-interest finding. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

BARRETT and THYER, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

---

[17]2019 Ark. App. 228, 575 S.W.3d 621.

*Dana McClain*, attorney ad litem for minor child.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.