Cite as 2025 Ark. App. 150

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-747

| | |
|---|---|
| SAMANTHA EALY<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered March 5, 2025<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-22-79]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Samantha Ealy appeals from the order of the Sebastian County Circuit Court terminating her parental rights to her minor child ("MC"). On appeal, Ealy challenges the circuit court's finding that termination was in MC's best interest. We affirm.

On February 19, 2022, the Arkansas Department of Human Services ("DHS") received a request for assistance after Ealy reported six-year-old MC missing. Ealy provided officers three different stories concerning what happened. Family service worker ("FSW") Ashley Avery stated that Ealy reported that she took medication and went to sleep at noon; when she woke up hours later, she realized MC was missing and called the police. Ealy said she kept lying about what happened out of fear. While officers were still at the home, MC returned. Avery stated that MC was wearing pajamas and smelled of urine. The home was messy and smelled of dog urine. The home also had a large hole in the ceiling with exposed wires and vents. Ealy's medications were found in multiple

locations throughout the home within MC's reach. FSW Avery was also informed that there was a pending referral from the Arkansas State Police Crimes Against Children Division ("CACD") alleging sexual abuse with Ealy as the alleged offender. Ealy was arrested for second-degree endangering the welfare of a minor in connection with the incident, and DHS exercised a seventy-two-hour hold on MC.

DHS filed a petition for emergency custody and dependency-neglect on February 23 alleging that MC was dependent-neglected as a result of parental unfitness. DHS completed a diligent search for relatives and fictive kin for MC's possible placement. Kristy Johnson (Ealy's mother and MC's maternal grandmother) and Gary Johnson, Sr. (Ealy's stepfather and MC's paternal grandfather), were found not to be an appropriate placement due to a lack of living space in their home. A family friend was also identified for consideration; however, she was not interested in being a fictive-kin home.

The affidavit supporting the emergency-custody petition also noted DHS's history with Ealy. She was removed from Johnson's custody due to inadequate supervision in May 2015 and reunified with Johnson in July 2016. While in DHS's custody, Ealy gave birth to MC; MC was removed in July 2015 due to inadequate supervision and returned to Ealy's custody in April 2017. Gary Johnson, Jr. (Johnson, Jr.), Ealy's stepbrother, was determined to be MC's biological father and was deemed unfit by the court. A no-contact order was issued prohibiting Johnson, Jr. from all direct and indirect contact with Ealy and MC.[1] An ex parte order for emergency custody was entered on February 23

---

[1]At the time of MC's birth, Ealy was fourteen years old; Johnson, Jr. was twenty-two years old. Johnson, Jr. pled guilty to second-degree sexual assault and is a Level 3 sex offender. Johnson, Jr.'s parental rights to MC were also terminated; however, he is not a party to this appeal.

placing MC in DHS's custody and finding that removal from Ealy's custody was in MC's best interest and necessary to protect his health and safety.

A probable-cause hearing was held on March 2, 2022. The circuit court found that probable cause existed for MC's removal from Ealy's custody and continued to exist and it was in MC's best interest to remain in the custody of DHS. The probable-cause order noted that Ealy was currently in the Sebastian County Detention Center on the charge of second-degree endangering the welfare of a minor. She was ordered to notify DHS when she was released from jail; notify DHS of developments regarding her criminal charges; inform DHS of contact information; and submit to random drug screens, hair-follicle tests, and alcohol swabs; and undergo psychological evaluation.

On April 13, Johnson, Ealy's mother, filed a petition for guardianship of MC. Attached to the guardianship petition was a notarized statement signed by Ealy expressing her wish that Johnson have temporary custody of MC.

In an order entered on July 20, MC was adjudicated dependent-neglected on the basis of parental unfitness due to inadequate supervision and environmental neglect due to Ealy's substance abuse. The goal of the case was established as reunification. Visitation was ordered to be strictly supervised and held at DHS's discretion. The court ordered that no discussion of the dependency-neglect case or the criminal case be held in the presence of MC. Cell phones were banned from visitation. Anyone approved for visitation was ordered to submit to drug screens. And the court found that "[d]ue to the maternal grandmother's "true" findings of maltreatment, she is not a viable placement option at this time." Ealy was ordered to comply with the case plan and visitation; remain clean and sober; maintain income, transportation, and appropriate housing; submit to random drug screens, hair-follicle tests, and alcohol swabs at DHS's request; undergo psychological evaluation and

3

comply with recommended treatment; keep DHS informed of updates regarding her criminal case; notify DHS of significant changes or events, such as arrest or incarceration, change of address or employment, change in marital status or in the makeup of the household, serious illness, injury, hospitalization, pregnancy, etc.; and keep DHS apprised of current contact information.

A review hearing was held on July 20. The case goal remained reunification with a concurrent goal of adoption. Ealy was admonished to not disparage DHS or the court during visitation with MC. She was further ordered to refrain from making promises to MC and coaching him to make any statements. Ealy stated that she is pregnant but refused to identify the father. The review order noted that Ealy had maintained housing and income and was attending counseling, but she had refused bus passes and relied on others for transportation; Ealy was ordered to attend her scheduled psychological evaluation. Ealy had completed parenting classes through STEPS; however, she failed to demonstrate the parenting skills during visitations with MC. She was ordered to complete an additional parenting course. Ealy was also ordered to comply with the prior court orders. The circuit court found DHS had complied with the case plan and orders of the court and made reasonable efforts to provide family services and finalize a permanency plan for MC.

On December 14, a permanency-planning hearing was held. The case goal was reunification with a concurrent goal of adoption following termination of parental rights. The court stated, "[T]hough the court has concerns in many areas, there is a compelling reason for reunification to remain a concurrent goal which is [in] compliance with the [Americans with Disabilities Act]." During the review period, Ealy completed parenting classes, maintained housing and income, began riding the bus, completed a psychological evaluation, continued counseling, and moved into a new apartment. The circuit court expressed concerns that Ealy had to call 911 several times during the

4

review period to be taken to the emergency room due to seizures. She also recently received a trespassing charge from Walmart from which she was banned. In addition to the prior ordered services, Ealy was ordered to participate in family counseling with MC once MC's therapist deemed it appropriate.

In January 2023, Ealy gave birth to her second child. A hold was placed on the infant two days later, and he was adjudicated dependent-neglected in March.

On April 12, 2023, a fifteen-month review hearing was held. The case goal remained the same: reunification with a concurrent goal of adoption following termination of parental rights. The circuit court again noted there "is a compelling reason documented in the case plan to continue with a goal of reunification due to [Ealy's] disability." Ealy was found to be compliant with the case plan. During the review period, she began day-treatment sessions, which helped her learn life skills. She visited with MC, but DHS was still concerned that she was unable to demonstrate adequate parenting skills. During her testimony at the hearing, Ealy apologized for her behavior at a recent hearing in a companion case, which included throwing a chair, slamming a door, and cursing at the court.

A second permanency-planning hearing was held on September 27 and continued on November 29. The circuit court changed the case goal to adoption following termination of parental rights because Ealy had not made significant and measurable progress. The court found that although Ealy worked her case plan and attempted day treatment and extra parenting courses, she had not demonstrated that she learned from those services and had not demonstrated proper parenting skills. During an August supervised visit with MC and his half sibling, Ealy inappropriately disciplined MC by "swatting" him and "thumping" him on his ear and on his back, leaving a bruise. Ealy's visitation with MC was suspended after the incident. The incident resulted in a "true finding" for physical

abuse. Ealy denied hurting MC; however, the court found her not credible. Testimony was also presented that Ealy did not understand the importance of cleaning and food safety and often had to be redirected regarding parenting issues.

The second permanency-planning order also noted Ealy's testimony regarding medical issues. She testified that despite medical orders to abstain from walking on her foot following ankle surgery, she wore through the protective boot. She also testified that she had four acute hospital stays during the review period. FSW Carol Jarvis testified that despite one-on-one help and a great number of parenting classes, Ealy had not demonstrated the ability to properly keep a child safe and to adequately parent. CASA representative Janet Beachy also stated that Ealy failed to demonstrate the necessary competency to safely parent MC. She testified that Ealy would need support to properly parent. FSW Jarvis testified that Ealy's support was limited and inconsistent. The court declined to reinstate Ealy's visits with MC, expressing extreme safety concerns due to Ealy's severe instability and stating that Ealy cannot meet MC's emotional, medical, and physical needs.

On April 12, 2024, DHS filed a petition to terminate Ealy's parental rights to MC. Ealy's parental rights to MC's younger sibling were involuntarily terminated on April 10, 2024. An amended termination petition was filed on April 15. DHS alleged the following statutory grounds in support of termination: failure to remedy, subsequent factors, aggravated circumstances, and prior termination of parental rights to another child. Following the termination-of-parental-rights hearing that commenced on May 15 and concluded on May 22, Ealy's parental rights to MC were terminated. Johnson's guardianship petition was also heard on May 22. The circuit court expressed several concerns that made Johnson inappropriate for placement; ultimately, the circuit court found that it was not in MC's best interest to be placed with Johnson. The termination order and the order

6

denying Johnson's petition for guardianship were entered on August 19. Ealy now appeals the termination-of-parental-rights order.

This court reviews termination-of-parental-rights cases de novo.[2] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[3] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[4] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] In determining whether a finding is clearly erroneous, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[6]

To terminate parental rights, a circuit court must find by clear and convincing evidence that one or more of the statutory grounds for termination exists.[7] Proof of only one statutory ground is sufficient to terminate parental rights.[8]

---

[2]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[3]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2023).

[8]*Tillman*, *supra*.

The circuit court terminated Ealy's parental rights on four grounds: failure to remedy, subsequent factors, aggravated circumstances, and prior involuntary termination of parental rights to another child. Ealy contests that sufficient evidence supports termination on the failure-to-remedy, subsequent-factors, and aggravated-circumstances grounds. However, she admits that her parental rights to MC's younger sibling were terminated. Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(4)* permits the termination of parental rights if the court finds that the parent has had his or her parental rights involuntarily terminated as to another child. The record reflects—and Ealy acknowledges—that her parental rights to MC's sibling were involuntarily terminated, thus meeting the requirements of the involuntary-termination ground. Because only one statutory ground needs to be proved to support termination of parental rights, Ealy concedes that grounds existed. Instead, she focuses her argument on the circuit court's best-interest determination.

In addition to statutory grounds for termination, the circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[9]

In making its best-interest determination, the circuit court found:

> Regarding adoptability, the court finds that [MC] is adoptable. Family Service Worker Cathleen Agenbroad testified that [MC] is young, well-adjusted and has no health issues. She testified that [MC] is currently in a placement with his brother and is thriving. The placement is willing to adopt. Ms. Agenbroad testified that [DHS] would have no problem finding a permanent home for MC in the unlikely event that the placement did not work out. The court considered the evidence presented and has no concerns whatsoever that

---

[9]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

8

[MC] is likely to be adopted. However, in the unlikely event that adoption is not imminent, the court finds that the risk of harm [Ealy] poses to [MC] far outweighs any issue of adoptability.

Regarding risk of harm, [MC] would be at risk of physical and psychological harm if returned to [Ealy]. [Ealy] has consistently been unable to comprehend and demonstrate parenting skills. [Ealy] has also been unable to follow medical advice for her own ailments, and her mental instability would place [MC] at risk of harm. [Ealy] lacks impulse control, has issues with mood instability, and has chronic mental illness. The father is a level 3 sex offender and has not attempted to participate in services with [DHS].

First, Ealy fails to challenge the adoptability factor of the circuit court's best-interest finding; thus, it is unnecessary to address the evidence as to adoptability on appeal.[10] In determining potential harm, the circuit court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody.[11] The circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm.[12] The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms.[13]

Ealy argues that the facts relied on by the circuit court are insufficient to support finding that termination of her parental rights is in MC's best interest. She asserts there was no evidence "to show any real risk of potential harm" to MC because of her parenting skills, inability to follow medical advice for her own ailments, mental health, and intellectual deficiencies. She additionally states that she "complied with everything that was asked." In support of her argument for reversal, Ealy cites

---

[10]*See Ealy v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 610, 701 S.W.3d 813.

[11]*Scott v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 347, 552 S.W.3d 463.

[12]*Id.*

[13]*Id.*

9

*Benedict v. Arkansas Department of Human Services*,[14] which reversed a termination because of a clearly erroneous best-interest finding. Ealy argues that, as in *Benedict*, she had demonstrated genuine attempts and efforts to comply with her case plan and had made steady efforts to develop the necessary parenting skills despite her mental-health issues and intellectual disabilities. Ealy contends that, as stated by her mental-healthcare provider, she "was not as impulsive as she used to be[,]" and although she would need lifelong treatment, she had the ability to learn to change her behavior. However, in *Benedict*, this court held that the appellant had benefited from the services provided by DHS, had shown "objective improvement," and had shown "marked progress" in her ability to provide a stable home.[15] Here, the evidence showed that despite the numerous services provided by DHS, Ealy's mental health had declined, and her parenting skills had not progressed. Moreover, her visitation was suspended after she harmed MC while being supervised by DHS. The evidence showing her inability to safely parent MC supports the finding that termination was in his best interest.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.

---

[14]96 Ark. App. 395, 242 S.W.3d 305 (2006).

[15]96 Ark. App. at 412, 242 S.W.3d at 319.