Cite as 2023 Ark. App. 552

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-253

| | |
|---|---|
| | **Opinion Delivered** November 29, 2023 |
| MARIA RODRIGUEZ AND RUDY MORALES-SALAZAR | |
| APPELLANTS | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-21-457] |
| V. | |
| | HONORABLE DIANE WARREN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Maria Rodriguez and Rudy Morales-Salazar bring separate appeals from the Washington County Circuit Court's termination-of-parental-rights order entered on January 27, 2023. On appeal, Maria requests a new hearing on the termination petition, alleging that she was denied an opportunity to be heard and present a defense. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*[1] and Arkansas Supreme Court Rule 6-9(j), Rudy's counsel has filed a motion to withdraw and a no-merit brief contending that there are no meritorious issues that would support an appeal. The clerk of this court mailed a certified copy of counsel's brief and motion to be relieved to Rudy, informing him of his right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(j)(3), which he failed to timely do. We affirm the termination order as to both Maria and Rudy. Additionally, we grant Rudy's counsel's motion to withdraw.

---

[1]359 Ark. 131, 194 S.W.3d 739 (2004).

On June 15, 2021, the Arkansas Department of Human Services ("the Department") was contacted by the Washington County Drug Task Force requesting a safety response following the arrests of Maria and Rudy for endangering the welfare of a minor, possession of a controlled substance with intent to distribute, possession of drug paraphernalia, and other charges as part of an ongoing narcotics investigation.[2] The minor children, MC1, MC2, and MC3, were present in the home when Maria and Rudy were arrested. The condition of the home also presented a safety hazard; it was described as being filled with feces and trash. The Department exercised a seventy-two-hour hold on the minor children.

An ex parte order for emergency custody was entered on June 18, placing the minor children in the Department's custody and finding that immediate removal from Maria's legal custody was in the children's best interest and necessary to protect their health and safety. Following the June 22 probable-cause hearing, the court found that Maria is a parent to all three juveniles and that Rudy is a parent to MC2 and MC3.[3] The court further found probable cause existed at the time of removal and probable cause continued such that it was in the minor children's best interest to remain in the Department's custody. On July 27, the minor children were adjudicated dependent-neglected as a result of parental unfitness due to Maria's and Rudy's involvement in illegal drug activity, significantly impairing the parents' ability to meet the needs of the minor children. The court found

---

[2]Maria has a history with the Department. There were two previous Garrett's Law true findings based on positive tests for methamphetamine at the time of birth of two of the children. Further, at the time of removal in this case, Maria had an open protective-services case for maltreatment but was not cooperating with or in contact with the Department.

[3]Angel Perez was identified as putative father of MC1; however, his whereabouts were unknown. He was believed to be a deported Mexican national.

Rudy to be a noncustodial parent with whom custody could not be placed because he did contribute to the dependency-neglect of the juveniles, and he failed to appear before the court to demonstrate that he is free of illegal substances. Likewise, Maria failed to present herself to the court, and there was no indication that she was free of illegal substances. Maria and Rudy were found to be unfit parents.[4] The case goal was established as reunification with a concurrent goal of adoption. Maria and Rudy were ordered to submit to a drug-and-alcohol assessment; sign any and all documentation necessary so that the Department could obtain a copy of their drug-and-alcohol assessments; follow all recommendations of the drug-and-alcohol assessments; and submit to random drug screens by urine sample or hair-follicle sample upon request by the Department.

Following the October 18 review hearing, the minor children were ordered to remain in the custody of the Department. The goal of the case continued to be reunification. Concurrent planning was found to be inappropriate at that time. The court found that the parents had failed to make significant progress. Maria had not maintained stable housing or completed a drug-and-alcohol assessment. No evidence was presented to establish that Rudy had participated in any services. Although the case plan, services, and placement were found to meet the juveniles' special needs and best interest, it was determined that the Department had not made reasonable efforts to provide family services and finalize a permanency plan for the juveniles. Specifically, the "family has not had the benefit of an interpreter for the case plan or having the case plan translated for them." The Department was ordered to provide a copy of the case plan to the parents in Spanish and to ensure that an interpreter is available for staffings.

---

[4]The court noted that it lacked sufficient evidence to determine whether Angel Perez is a fit parent because he had not presented himself to the court to make himself available for placement.

Another review hearing was held on December 13. The court found that the Department had provided the parents with a case plan in Spanish and provided an interpreter for the case-plan staffing. The Department had also referred the parents for parenting classes in Spanish. The Department was deemed to have remedied the language-barrier issue and had made reasonable efforts to provide family services and finalize a permanency plan for the juveniles. The review order noted that Maria was pregnant and due the following month; Rudy was identified as the unborn child's putative father.

MC4 was born on January 28, 2022. After a positive drug screen on March 23, Maria admitted that she used methamphetamine during her pregnancy, and she had used drugs since MC4's birth, most recently two days prior to submitting to the drug test. She further stated that Rudy was incarcerated. The Department exercised a seventy-two-hour hold on MC4. A petition for emergency custody and dependency-neglect regarding MC4 was filed on March 28. The petition alleged that MC4 was dependent-neglected and requested that the court make a finding of aggravated circumstances because there was little likelihood that services would result in successful reunification.

A probable-cause order was entered on May 1, finding that probable cause existed to issue the March 28 ex parte order for emergency custody of MC4, and probable cause continued to exist such that it was in MC4's best interest to remain in the Department's custody. Particularly, Maria admitted to recent methamphetamine use and Rudy was currently incarcerated. Following a hearing on May 31, MC4 was adjudicated dependent-neglected due to parental unfitness; the court accepted the parties' stipulation to the parents' drug abuse.

4

On May 31, the court also held a permanency-planning hearing for MC1, MC2, and MC3. After considering the evidence and the juveniles' best interest, the court changed the case goal to adoption following termination of parental rights.

The Department filed a petition for termination of parental rights on August 19 alleging two grounds for termination—failure to remedy and subsequent factors—and that termination was in the children's best interest. Following the October 25 termination hearing, an order was entered terminating Maria's parental rights to MC1, MC2, and MC3. Rudy's parental rights to MC2 and MC3 were also terminated.[5] Maria and Rudy now separately appeal from the termination order.

This court reviews termination-of-parental-rights cases de novo.[6] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[7] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[8] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm

---

[5]Perez's parental rights to MC1 were also terminated; however, he did not appear in the case and is not a party to this appeal.

[6]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[7]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[8]*Id.*

conviction that a mistake has been made.[9] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[10]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[11] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exist.[12] Proof of only one statutory ground is sufficient to terminate parental rights.[13] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[14] The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[15]

---

[9]*Id.*

[10]*Id.*

[11]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021).

[12]Ark. Code Ann. § 9-27-341(b)(3)(B).

[13]*Tillman*, *supra.*

[14]*Id.*
[15]Ark. Code Ann. § 9-27-341(a)(3).

We address Maria's separate appeal first. She does not challenge the circuit court's findings that sufficient evidence supports the statutory grounds for termination or that termination of her parental rights is in her children's best interest. Instead, she argues "that this matter should be remanded for a new hearing on the termination petition because she was not allowed to be heard."

Maria was not present at the hearing; however, she was represented by counsel. Regarding her absence, Maria's counsel stated that she "apparently checked into rehab" the previous day and that she could not reach her. The circuit court inquired, "Are you asking for a continuance on behalf of mom?" Maria's counsel responded, "Your Honor, I wasn't planning on it." The circuit court proceeded with the termination hearing. Maria contends that because she was not present, the circuit court violated her due-process rights by continuing with the termination hearing. Since no due-process argument was raised below, it is not preserved for appellate review.[16] Not only did Maria fail to raise a due-process argument before the circuit court, but her counsel also expressly stated that she was not requesting a continuance due to Maria's absence.

Maria acknowledges that, generally, the failure to make a contemporaneous objection or to obtain a ruling on an issue is fatal to this court's consideration of the issue on appeal.[17] However, Maria asserts that, in this case, a *Wicks* exception is warranted.

---

[16]*Harris v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 559, 538 S.W.3d 842.
[17]*See Holder v. Ark. Dep't of Hum, Servs.*, 2016 Ark. App. 424, 501 S.W.3d 845.

In *Wicks v. State*,[18] our supreme court outlined a few limited exceptions to the contemporaneous-objection rule. The third "extremely rare exception" to the rule "relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial."[19] We have interpreted the third *Wicks* exception to mean that "no objection is required to preserve an issue for appeal where the error is so flagrant and egregious that the trial court should, on its own motion, have taken steps to remedy it."[20] Maria contends that this is the case here. We are unpersuaded.

Maria makes several arguments regarding her absence at the termination hearing and the application of the *Wicks* exception. First, she alleges there was no indication that she did not want to attend the hearing; however, she develops no argument regarding the value of her presence at the termination hearing. Next, Maria contends that relative placement was not adequately explored as an alternative option. She fails to explain how her appearance—rather than her counsel's appearance—was required at the hearing to advance a relative-placement argument. Additionally, the termination order states, "Throughout this case, the Department has evaluated numerous family members for placement, but none have been provided. There is no evidence of relatives that have been provided to and approved by DHS." Plainly, relative placement was considered as an alternative option to termination. Last, Maria states that she has "subsequent children under the juvenile court jurisdiction"; therefore, "she is still presumed to be actively involved and subject to the jurisdiction

---

[18]270 Ark. 781, 606 S.W.2d 366 (1980).

[19]*Id.*

[20]*Baker v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 400.

of the court." On this point, Maria's argument is unclear. Further, she fails to cite any authority explaining how children born after the case had begun are relevant to the termination of her parental rights to MC1, MC2, and MC3.

At the termination hearing, Maria was represented by counsel, and her attorney fully participated in the hearing. Maria makes no argument, much less a convincing one, that her presence at the hearing would have influenced or changed the outcome of the case, especially given the evidence presented at the termination hearing demonstrating Maria's extensive and continued drug use and instability. Therefore, we find this situation does not fall within the "extremely rare" third *Wicks* exception reserved for flagrant and egregious trial errors, and we cannot address the argument due to lack of preservation. We affirm the circuit court's order terminating Maria's parental rights to the children.

Rudy separately brings a no-merit appeal from the circuit court's termination of his parental rights to MC2 and MC3. Arkansas Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal.[21]

---

[21]Ark. Sup. Ct. R. 6-9(i)(1)(A).

Counsel contends that there was sufficient evidence presented at the termination hearing to support the grounds for termination, and any challenge to the circuit court's finding would be frivolous. Specifically, counsel states that the evidence sufficiently supports an aggravated-circumstances finding. Our review of the record and termination order establishes that the circuit court terminated Rudy's parental rights on the twelve-month failure-to-remedy and subsequent-factors grounds; the termination of Rudy's parental rights was not based on a finding of aggravated circumstances. However, footnote 5 in Rudy's no-merit brief provides:

> It bears noting, however, that these same facts support the court's reliance on another ground that was pled, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b), which allows for termination where the children have been adjudicated dependent-neglected, are out of the non-custodial parent's home for twelve months, and despite reasonable efforts by the Department, the parent has failed to remedy the issues that prevent placement.

We agree and consider the evidence as it relates to termination based on the failure-to-remedy ground.

In the termination order, the circuit court found:

> The juveniles were removed from the custody of Maria Rodriguez Murillo on June 15, 2021 and placed into the Department's custody on June 18, 2021. The juveniles were adjudicated dependent-neglected on July 27, 2021 based on parental unfitness. Specifically, the parties stipulated that the allegations in the affidavit of facts supported findings that Maria and Rudy were involved in illegal drug activity, that their drug use impaired their ability to meet the needs of the children, and the involvement with law enforcement as a result impaired their ability to meet the needs of the children.

> Custody of the juveniles could not be placed with Rudy Morales-Salazar because he was incarcerated, and has been incarcerated for a majority of the case. Also, at the time of removal he had not established paternity as to the juveniles. Mr. Morales-Salazar also had a dependency on illegal substances. In June of 2022, Mr. Morales-Salazar finally obtained a drug and alcohol assessment and was referred to residential treatment, but he has failed to refrain from illegal substances, and has since been incarcerated. Mr. Morales-Salazar also has not demonstrated stability in housing and his circumstances.

Since the juveniles' removal from the home, Rudy Morales-Salazar has failed to remedy conditions that prevented placement of [MC2] and [MC3] in his custody, despite the offering of meaningful services by the Department. The juveniles cannot be safely placed with him, as he remains incarcerated.

When the termination hearing took place, MC2 and MC3 had been out of the home for more than sixteen months. The children were placed in the Department's custody due to parental unfitness stemming from Maria's and Rudy's drug use and involvement in criminal drug activity. In the early stages of the case, Rudy was ordered to submit to a drug-and-alcohol assessment and follow the resulting recommendations. However, the undisputed evidence demonstrates that Rudy waited an entire year before submitting to a drug-and-alcohol assessment. He was then referred to residential treatment but continued to use illegal substances following treatment. Rudy admitted that, throughout the case, he had achieved only two months of sobriety—the two months he was in the residential treatment facility. After treatment, Rudy still struggled with drug issues. In light of this record, we hold that the circuit court's termination of Rudy's parental rights on the basis of the failure-to-remedy ground is supported by sufficient evidence.

Counsel further explains that evidence presented at the termination hearing also supports the circuit court's best-interest finding. Caseworker Hayley Miles testified that the children are highly adoptable. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.[22] As for potential harm, the circuit court found that the children's health and safety would be at risk if returned to Rudy. In particular, the court found that the children would be subjected to similar substance abuse and instability that existed before they entered foster care. The court noted

---

[22]*Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540.

that MC2 had spent half her life in foster care while MC3 had spent his entire life in foster care. Further, not only was Rudy incarcerated for most of the case, but he was also incarcerated when the termination hearing occurred, thereby making it impossible for MC2 and MC3 to be placed with him. We have stated that failure to live a law-abiding life supports a finding of potential harm.[23] We have also held that an addicted parent's illegal drug use and instability may demonstrate a risk of potential harm for children.[24]

Finally, counsel asserts that other than the termination decision itself, there were no other rulings adverse to Rudy at the termination hearing. We concur and hold that counsel has adequately addressed the sufficiency of the evidence in the no-merit brief and complied with the requirements of *Linker-Flores* and this court's rules.

We affirm the termination of Maria's and Rudy's parental rights to the children and grant Rudy's counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

VIRDEN and GRUBER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for separate appellant Rudy Morales Salazar.

*Dusti Standridge*, for separate appellant Maria Rodriguez.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.

---

[23]*Blasingame v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 342, 582 S.W.3d 873.

[24]*Robinson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 262, 520 S.W.3d 322.