Cite as 2026 Ark. App. 28

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-25-348

| | |
|---|---|
| JEREMY DYKES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | **Opinion Delivered** January 14, 2026<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-24-137]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## WAYMOND M. BROWN, Judge

Counsel for appellant Jeremy Dykes brings this no-merit appeal from the Sebastian County Circuit Court's order terminating Dykes's parental rights to his son, Minor Child ("MC"). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[1] and Arkansas Supreme Court Rule 6-9(j), Dykes's counsel has filed a motion to withdraw and a no-merit brief contending that there are no meritorious issues that would support an appeal. The clerk of this court mailed a certified copy of counsel's brief and motion to be relieved to Dykes, informing him of his right to file pro se points for reversal under Arkansas Supreme Court Rule 6–9(j)(3), which he failed to timely do. We affirm the termination order and grant counsel's motion to withdraw.

---

[1]359 Ark. 131, 194 S.W.3d 739 (2004).

On January 16, 2024, the Arkansas Department of Human Services (the Department) opened a protective-services case after receiving a Garrett's Law hotline call concerning MC, a newborn with illegal substance exposure. The Department established a safety plan to monitor the family; however, Dykes and MC's mother, Melissa Woodall, failed to maintain contact with the Department.[2] Their whereabouts were unknown until April 2, when the Department was contacted by U.S. Marshals stating that they had arrested Dykes and Woodall on warrants for contempt failure to pay, petition to revoke, terroristic threatening in the first degree, third-degree domestic battering, and fugitive from justice out of state for absconding from Kansas. MC was located, and the Department exercised a seventy-two-hour hold.

In an April 4 team decision meeting ("TDM"), Dykes stated that he and Woodall had no intention of working with the Department, and they were planning to flee the state with MC. He acknowledged drug usage and stated that he was "more sober on speed" and that to "take care of a child you have to do illegal things."

On April 5, the Department filed a petition for dependency-neglect and emergency custody alleging that MC was dependent-neglected on the basis of abuse, including parental drug use, neglect, and parental unfitness. An ex parte order for emergency custody was entered that same day, placing MC in the Department's custody.[3] Following the April 10 probable-cause hearing, the court found

---

[2]The Department has a significant history with the family. Dykes had a dependency-neglect case for environmental neglect, threat of harm, and inadequate supervision that led to termination of his parental rights to two juveniles in August 2018. In 2023, Dykes was dismissed from a subsequent dependency-neglect case after failing to establish paternity.

[3]An amended ex parte order for emergency custody was entered on April 8, 2024.

that the emergency conditions that necessitated removal continued such that it was in MC's best interest to remain in the Department's custody.

In the July 8 adjudication order, MC was adjudicated dependent-neglected based on parental unfitness due to substance abuse. The Department was ordered to make a referral for DNA testing to determine whether Dykes is MC's biological father. Dykes was ordered to obtain and maintain stable and appropriate housing, employment, income, and transportation; complete parenting classes; stay clean and sober; submit to random drug screens, hair-follicle tests, and alcohol swabs at the Department's request; resolve all pending criminal matters and inform the Department of court dates, pleas, and sentences; work all available services while incarcerated; notify the Department of any significant changes or events, such as an arrest or incarceration, a change of address or employment, a change in marital status or in the makeup of the household, a pregnancy, serious illness, or hospitalization; keep the Department apprised of current contact information; and visit MC as authorized by the Department. The goal of the case was established as reunification.

A review hearing was held on October 2. DNA testing results confirmed Dykes's paternity, and he was found to be MC's biological father. The Department was found to have made reasonable efforts and to have complied with the case plan and orders of the court by providing services, including drug-and-alcohol assessments, drug screens, hair-follicle tests and alcohol swabs, case management, visitation, and other services. Dykes was found noncompliant with the case plan. He had not visited with MC, and he was incarcerated and had been sentenced to ten years in Arkansas Division of Correction ("ADC"). Dykes was ordered to work any services available to him while incarcerated. Visitation was ordered at the discretion of the Department. The case goal was changed to reunification with a concurrent goal of adoption following termination of parental rights.

3

The Department filed a petition for termination of parental rights on December 20, alleging multiple grounds for termination: aggravated circumstances, parental rights were involuntarily terminated as to a child, and parent was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.

On March 12, 2025, the court held a hearing on the termination petition. Family service worker ("FSW") Laura Suggs testified that Dykes failed to complete any services offered by the Department and that he is currently incarcerated. She stated that there are no additional services that could be offered that would result in successful reunification. FSW Suggs testified that Dykes had not attempted communication, there were no visits, and there is no bond between Dykes and MC. She stated that MC is adoptable, and 291 homes had been identified for placement. FSW Suggs testified that she visited Dykes in jail and that he was provided with a copy of the case plan. She stated that when she discussed the case with Dykes, he told her that he would sign over his parental rights if MC is happy and healthy.

Dykes also testified at the termination hearing. He stated that he is currently incarcerated with a parole-eligibility date of October 17, 2026. He acknowledged that he had one meeting with FSW Suggs wherein he was provided with the case plan. Dykes requested time after his release to work toward reunification with MC. He stated that, in 2013, while previously incarcerated, he completed anger-management classes, "Drugs 101," and "Life and Social Skills." In 2014, he participated in a substance-abuse program. He again took anger-management classes in 2015 and 2016 as well as job readiness and relationships classes in 2017. Dykes stated that he could take all those courses again during his current period of incarceration. He further denied expressing a willingness to consent to termination of his parental rights to MC.

4

At the close of the hearing, the circuit court granted the Department's termination petition. The termination order was entered on March 31.

This court reviews termination-of-parental-rights cases de novo.[4] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[5] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[6] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[7] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[8]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[9] The circuit court must also find by clear and convincing evidence that one or more

---

[4]*Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[5]*Tillman v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 119.

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2023).

statutory grounds for termination exists.[10]  Proof of only one statutory ground is sufficient to terminate parental rights.[11]  Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[12]  The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[13]

Arkansas Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal.  The brief must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explains why each adverse ruling is not a meritorious ground for reversal.[14]

Counsel contends that there was sufficient evidence presented at the termination hearing to support the grounds for termination, and any challenge to the circuit court's finding would be

[10]Ark. Code Ann. § 9-27-341(b)(3)(B).

[11]*Tillman*, *supra*.

[12]*Id.*

[13]Ark. Code Ann. § 9-27-341(a)(3).

[14]Ark. Sup. Ct. R. 6-9(i)(1)(A).

frivolous. Among the grounds found by the circuit court to support the termination of Dykes's parental rights was the sentenced-in-a-criminal-proceeding ground.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) provides that a court may terminate parental rights if the parent is sentenced in a criminal proceeding for a period of time that constitutes a substantial period of the juvenile's life. During the termination hearing, the Department introduced, without objection, a certified copy of a sentencing order establishing that, on June 21, 2024, Dykes was sentenced to serve 144 months in the ADC. At that time, MC was fourteen months old, and Dykes had served only nine months of his twelve-year sentence. Although Dykes testified that his parole-eligibility date is October 2026, it is the sentence and not the potential release date that is controlling.[15] We have held that a twelve-year sentence constitutes a substantial period of a four-year-old child's life.[16] In the present case, MC was much younger than four years old; therefore, the circuit court did not clearly err in finding that Dykes's twelve-year prison sentence constitutes a substantial portion of MC's life.

Nor can a meritorious argument be made to the best interest of the child. There was testimony from FSW Suggs that MC is adoptable, with nearly three hundred potential matches. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.[17] As to potential harm, MC was removed from Dykes's custody when he was two months old. In the year since removal, Dykes had failed to visit, communicate, or initiate contact with MC, and he wholly

---

[15] See *Bowman v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 477.

[16] See *Heflin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 182, 458 S.W.3d 362.

[17] *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540.

failed to work the services provided by the Department. The testimony at the termination hearing established that Dykes has no relationship or bond with MC. Additionally, Dykes is serving a significant prison sentence. He is without income and an appropriate home for MC. A parent's continued instability is sufficient to demonstrate a risk of potential harm to support a court's best-interest finding. On this record, we agree with counsel that the evidence supports the circuit court's finding that termination is in MC's best interest.

Counsel asserts that there were two other adverse rulings at the termination hearing, and neither provides grounds for reversal.

First, Dykes testified that he had only one contact with the Department, and he did not receive a copy of the case plan until January 2025, long after MC's March 2024 removal. The record demonstrates that Dykes was represented by counsel from the outset of the case. He acknowledged that, via phone, he participated in the May 2024 staffing during which services were discussed with the Department. The Department also provided DNA testing to establish paternity. Clearly, here, as in *Sills v. Arkansas Department of Human Services*,[18] Dykes was a named party, was aware of the action, participated in the case, was offered services, was appointed counsel, and appeared at the termination hearing with the benefit of counsel. As such, we agree with counsel that Dykes was allowed a meaningful opportunity to participate in the proceedings, and this issue provides no basis for reversal.

At the conclusion of the hearing, Dykes requested "additional time to be able to do the things necessary to reunify with" MC. The circuit court's decision to terminate his parental rights served as a denial of that request. The intent behind the termination-of-parental-rights statute is to provide

---

[18]2018 Ark. App. 9, 538 S.W.3d 249.

8

permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[19] At the termination hearing, Dykes was less than one year into his twelve-year sentence of incarceration. He had already been out of fourteen-month-old MC's life for more than a year. The circuit court was not required to give Dykes more time, and it was unclear when or if he would be able to provide MC with a permanent, stable home. Therefore, the circuit court did not err in denying Dykes's request for additional time to work toward reunification.

Having carefully examined the record and counsel's brief, we agree that none of the adverse rulings provide a meritorious basis for reversal. Accordingly, we affirm the termination of Dykes's parental rights to MC and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

KLAPPENBACH, C.J., and GLADWIN, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only,

---

[19]*Sanford v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 578, 474 S.W.3d 503 (citing Ark. Code Ann. § 9-27-341(a)(3)).